1 Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com

2 Kristen E. Law (State Bar No. 222249)
klaw@lchb.com

3 LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

4 275 Battery Street, 30th Floor
San Francisco, CA 94111-3336

5 Telephone: (415) 956-1000

6 Facsimile: (415) 956-1008

7 Elizabeth A. Alexander
ealexander@lchb.com

8 LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, North, Suite 1650

9 Nashville, TN 37219-2423
Telephone: (615) 313-9000

10 Facsimile: (615) 313-9965

11 [additional counsel listed on signature pages]

12 *Attorneys for Plaintiffs and the Proposed Class*

13

**F I L E D**

SEP 30 2008

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

SUPERIOR COURT OF CALIFORNIA

14 SANTA CRUZ COUNTY

15

16 ERIC ROSS, THOMAS MABREY, JR. and

17 DIANNA SPALLIERO, on behalf of themselves
and all others similarly situated,

18 Plaintiffs,

19 v.

20 TREX COMPANY, INC., a Delaware
corporation,

21

22 Defendant.

CASE NO.: 01 161 553

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**FILED BY FAX**

23

24 Plaintiffs Eric Ross, Thomas Mabrey, Jr. and Dianna Spalliero ("Plaintiffs") allege

25 the following on behalf of themselves and all similarly situated:

26 **I.    INTRODUCTION**

27 1.    Plaintiffs bring this action for monetary damages, declaratory and equitable

28 relief, and restitution and/or disgorgement of profits on behalf of themselves and all similarly-

783791.2

- 1 -

1   situated individuals and entities (the "Class") who own decking products manufactured,

2   warranted, advertised, and sold by Trex Company, Inc. ("Trex").

3          2.      Trex decking products are inherently defective because when installed and

4   maintained in accordance with Trex's instructions, they experience delamination and moisture-

5   related defects and are substantially certain to fail well before their warranted and expected useful

6   life ("Defects"). These Defects are latent and exist in the Trex decks at the time of sale regardless

7   of proper installation, maintenance and cleaning, and there is no repair that will correct the

8   problems.

9          3.      Trex has been manufacturing, warranting, advertising and selling Trex

10   products it knew or should have known were inherently defective since approximately 1996, and

11   perhaps before.

12          4.      As a result of these Defects, Plaintiffs and thousands of others in California

13   and across the United States own inherently defective Trex decks that are failing to perform as

14   warranted and advertised by Trex, did not get what they paid for, and have incurred or will incur

15   thousands of dollars in damages to replace their decks.

16   **II.    PARTIES**

17          5.      Plaintiff Eric Ross resides in Santa Cruz, Santa Cruz County, California.

18   He purchased Trex Accents decking material in or around June 2005, for approximately

19   $2,926.84. Plaintiff Ross constructed a deck on his home from those materials, at an additional

20   cost of approximately $2,000.  In or about January 2007, Plaintiff Ross's deck began to show

21   signs of delamination. Plaintiffs' expert has inspected Plaintiff Ross's deck and confirmed that

22   the delamination defect has manifested.

23          6.      Plaintiff Thomas Mabrey, Jr. is an Illinois resident who resides in

24   Inverness, Cook County, Illinois. Plaintiff Mabrey purchased Trex Escape decking material in

25   March 2005 at a cost of approximately $13,600 for materials and labor. Within just a few months

26   after installation, the deck started to manifest the Defects. Plaintiff Mabrey's contractor

27   attempted to contact Trex on numerous occasions on his behalf to discuss his problem but the

.28   company did not respond to his telephone messages and emails.

7.    Plaintiff Dianna Spalliero is resident of Chicago, Cook County, Illinois. Plaintiff Spalliero purchased Trex decking material in approximately June 2007 through a contractor. The total cost of the decking materials and labor to install the deck was approximately $12,000. Roughly one year after the deck was installed, it started to manifest the Defects. Plaintiff Spalliero spoke to her contractor about the problem, and he contacted Trex. Trex told Plaintiff Spalliero's contractor that the Defects were not covered under her warranty and it could not provide her with any relief.

8.    Trex is incorporated in Delaware and has its principal place of business in Winchester, Virginia. It is the country's largest manufacturer of wood-plastic composite decking, railing, fencing and trim products. Its products are marketed and sold under the brand name "Trex." The company does business throughout California and the United States. It manufactured, warranted, advertised and sold the defective decking products that were installed on Plaintiffs' homes and those of thousands of others throughout California and the United States.

**III.    JURISDICTION**

9.    This Court has jurisdiction over this action pursuant to California Code of Civil Procedure Section 410.10. Jurisdiction over Trex is proper because it has purposefully availed itself of the privilege of conducting business activities in California by selling Trex decking materials to Plaintiff Ross and members of the Class, by maintaining a distribution center in this State, and because it has generally maintained systematic and continuous business contacts with this state.

**IV.    VENUE**

10.   Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 395(a), 395(b), 395.5, Civil Code § 1780(c), because (a) some of the described injuries to property occurred in this county; (b) some of the acts and transactions complained of herein occurred within this county; and (c) Trex conducts business in this county by warranting, advertising and selling its decking products here.

11.   A venue affidavit pursuant to California Civil Code § 1780(c) is attached hereto as Exhibit A.

## V.   CHOICE OF LAW

12.   California law governs the claims asserted herein.

13.   No enforceable choice-of-law agreement governs here or compels the application of different states' laws.

14.   California's interest in this action, which seeks to protect the rights and interests of California and other U.S. residents against a company doing business in California, is greater than any other State.

15.   A common nucleus of facts and legal issues dominates this litigation. Although some class members may possess slightly differing remedies based on state statute or common law, the claims asserted by the Plaintiffs are predicated on the same core facts and legal claims with substantially the same relevant elements.  To the extent distinct remedies may exist, they are local variants of a generally homogenous collection of causes of action which include consumer fraud, breach of express warranty and unjust enrichment.

16.   California has the most significant relationship with the parties and to the events and occurrences that form the basis of the litigation.  Trex distributes its product in California and maintains a distribution center in the State.  Plaintiff Ross resides in Santa Cruz County, California.  He purchased Trex decking material in California, and the decking material is currently located in California.  Thousands of other California residents also purchased and own Trex decks that have experienced or will experience the Defects.

17.   Application of California law is neither arbitrary nor fundamentally unfair, because California has significant contacts and a significant aggregation of contacts that create a state interest in this litigation.

## VI.   FACTUAL ALLEGATIONS

18.   Trex is a wood-plastic composite decking material that Trex manufactures using a blend of plastics and recycled post-industrial wood fibers.  Trex is advertised as a premium material suitable for constructing outdoor decks, railings and other related structures. Trex is typically more expensive than decking products made from alternate materials, such as treated wood, redwood and cedar.

19.    Upon information and belief, Trex has been manufacturing, advertising, warranting and selling Trex for consumer and commercial use since at least 1996.

20.    Trex advertises its decking as "tak[ing] the natural beauty of wood, but leav[ing] behind all the rotting and splintering," and as "resistant to moisture." <http://www.trex.com/decking/default.aspx>

21.    Trex warrants its products for twenty-five (25) years from the date of original purchase. The warranty provides that "Trex products shall be free from material defects in workmanship and materials, and shall not check, split, splinter, rot or suffer structural damage from termites or fungal decay." <http://www.trex.com/warranty/>

22.    Trex decking products, however, experience the Defects shortly after installation, and well before their warranted and expected useful life. The Defects are unsolvable, in that there is no repair or cleaning that can correct the problems.

23.    Plaintiffs and their counsel have been in contact with approximately three hundred (300) owners of Trex decks throughout the United States who have experienced the Defects.

24.    Trex fails in its purpose of providing suitable material with which to build and maintain a deck, and it fails to meet its advertised and warranted qualities of being low maintenance, superior to wood, and fit for use without application of sealants.

25.    Trex has refused to provide adequate relief to Plaintiffs or thousands of others like them whose decks are prematurely failing.

## VII.   TOLLING

26.    Because the Defects are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover them until after purchase and installation, despite their exercise of due diligence.

27.    Trex knew of the Defects prior to the time of sale, and concealed that material information from Plaintiffs and all consumers. Any applicable statutes of limitation have, therefore, been tolled by Trex's concealment of material facts.

CLASS ACTION COMPLAINT

28.     Trex is estopped from relying on any statues of limitation because of its concealment of the Defects.

## VIII.   CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated consumers as members of a proposed plaintiff class pursuant to California Code of Civil Procedure § 382, California Civil Code § 1781, and, to the extent applicable, the analogous provisions of Federal Rule of Civil Procedure 23.  Based upon the allegations of this Complaint, this action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements for class certification in California Courts.

30.     The Class is defined as:

> All persons and entities, who own decking or structures constructed of Trex deck material, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote (the "Class").

31.     The following Persons shall be excluded from the Class: (1) Trex and its subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

32.     In addition, all claims for personal injury, wrongful death and emotional distress are excluded from the Class.

33.     Plaintiffs reserve the right to re-define the Class prior to certification.

### Ascertainability & Numerosity

34.     Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, Plaintiffs are informed and reasonably believe the number of affected structures constructed from Trex products is in the tens of thousands, such that joinder is impracticable.

35.     The Class is composed of an easily ascertainable, self-identifying set of individuals and entities who own decks or other structures constructed with Trex material.

## Community of Interest

36.    There is a well-defined community of interest among the proposed Class members, and the disposition of all their claims in a single action will provide substantial benefits to all parties and to the Court.

## Typicality

37.    The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, own defective Trex decks, and have been damaged by Trex's uniform misconduct by having decks that are deteriorating or otherwise defective.

38.    The representative Plaintiffs, like all Class members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost cleaning and/or replacing the defective Trex decking products, including the labor costs.

39.    Furthermore, the factual bases of Trex's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.

## Predominance of Common Issues

40.    There are numerous questions of law and fact common to Plaintiffs and the Class. Those questions predominate over any questions that may affect individual Class members, and include the following:

41.    Whether Trex products are defective in that they experience delamination and moisture-related defects, and are therefore substantially certain to fail under ordinary conditions well in advance of their expected useful life;

42.    Whether Trex knew or should have known of the inherent design and/or manufacturing defects in Trex products and concealed those facts;

43.    Whether Trex misrepresented that its products had certain qualities, characteristics or benefits;

44.    Whether Trex represented that its products were of a particular standard, quality or grade when they were not;

CLASS ACTION COMPLAINT

45. Whether Trex advertised and/or offered for sale products that were defective without clearly and unequivocally indicating that the products were defective;

46. Whether the facts Trex misrepresented, concealed or failed to disclose were material;

47. Whether as a result of Trex's misrepresentation and/or concealment of material facts, Plaintiffs and the Class acted to their detriment by purchasing Trex products;

48. Whether Plaintiffs and the Class have suffered a loss as the result of Trex's misrepresentation and/or concealment of material facts;

49. Whether Trex's conduct in advertising and selling Trex products constitutes a violation of the California Consumer Legal Remedies Act, Civ. Code § 1750, *et seq.* ("CLRA");

50. Whether Trex's conduct in advertising and selling Trex products constitutes a violation of California's Unfair Business Practices Act, Bus. & Prof. Code § 17200, *et seq.*;

51. Whether Trex created express warranties regarding its product;

52. Whether those warranties became part of the basis of the bargain for Plaintiffs and the Class;

53. Whether Trex should be declared financially responsible for notifying all Class members of the problems with Trex products and for the costs and expenses of repair and/or replacement of all such products;

54. Whether Plaintiffs and the Class are entitled to compensatory, exemplary, and statutory damages, and the amount of such damages; and

55. Whether Trex should be ordered to disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of defective Trex products, and/or to make full restitution to Plaintiffs and the members of the Class.

**Adequacy**

1
2      56.    Plaintiffs will fairly and adequately protect the interests of the Class. They

3   have retained counsel with substantial experience in prosecuting consumer class actions, and

4   specifically actions involving defective products.

5      57.    Plaintiffs and their counsel are committed to prosecuting this action

6   vigorously on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor

7   their counsel has any interests adverse to those of the Class.

8      58.    Plaintiffs and the members of the Class have all suffered and will continue

9   to suffer harm and damages as a result of Trex's unlawful and wrongful conduct. A class action

10  is superior to other available methods for the fair and efficient adjudication of the controversy.

11  Absent a class action, most members of the Class would likely find the cost of litigating their

12  claims to be prohibitive, and would have no effective remedy at law. Because of the relatively

13  small size of the individual Class members' claims, it is unlikely that Class members could afford

14  to seek legal redress for Trex's misconduct. Absent a class action, Class members will continue

15  to incur damages and Trex's misconduct will continue without remedy. Class treatment of

16  common questions of law and fact would also be superior to multiple individual actions or

17  piecemeal litigation in that class treatment will conserve the resources of the courts and the

18  litigants, and will promote consistency and efficiency of adjudication.

19                              **FIRST CLAIM FOR RELIEF**

20  **(Violation of the Consumer Legal Remedies Acts, Civ. Code § 1750, et seq. ("CRLA"))**

21     59.    Plaintiffs hereby incorporate by reference the allegations contained in the

22  preceding paragraphs of this Complaint.

23     60.    Trex is a "person" as defined by Civil Code § 1761(c).

24     61.    Plaintiffs and the Class members are "consumers" within the meaning of

25  Civil Code § 1761(d).

26     62.    The affected products are "goods" within the meaning of California Civil

27  Code § 1761(a).

28

783791.2                                  - 9 -

1       63.     Plaintiffs' purchases of Trex products constituted "transactions" as that

2   term is defined in California Civil Code § 1761(e).

3       64.     Trex violated the CLRA's "proscription against a concealment of the

4   characteristic, use, benefit, or quality" of the Trex products by actively concealing in all of its

5   advertising, warranties, and representations the material fact that the Trex products are defective

6   and substantially certain to fail prematurely.

7       65.     Trex violated the CLRA's proscription against misrepresentation of the

8   characteristics, use, benefit, or quality of goods by affirmatively misrepresenting at all times to

9   Plaintiffs, Class members, and everyone in the chain of distribution in all of its broadly

10  disseminated marketing and advertising, that its Trex products are moisture resistant and are

11  superior to wood products with respect to splintering when, in fact, they are not. Specifically

12  Trex's representation of material facts regarding its Trex products superior qualities violated (a) §

13  1770(a)(5)'s proscription against representing that goods have uses, characteristics or benefits

14  they do not actually have; (b) § 1770(a)(7)'s proscription against representing that goods are of a

15  particular standard, quality or grade when they are of another; and (c) § 1770(a)(9)'s proscription

16  against advertising goods with the intent not to sell them as advertised.

17      66.     Trex's active concealment of material facts violated § 1770(a)(5)'s

18  proscription against representing that goods have uses, characteristics or benefits they do not

19  actually have.

20      67.     Trex's active concealment of material facts violated § 1770(a)(7)'s

21  proscription against representing that goods are of a particular standard, quality or grade when

22  they are of another.

23      68.     Trex's active concealment of material facts violated § 1770(a)(9)'s

24  proscription against advertising goods with the intent not to sell them as advertised.

25      69.     The facts concealed by Trex were material, in that a reasonable person

26  would have considered them important in deciding whether or not to purchase (or to pay the same

27  price for) the Trex products.

28

1    70. Trex's concealment and deceptive practices, in violation of the CLRA,

2 were designed to induce Plaintiffs and the members of the Class to purchase Trex products.

3    71. Trex intended to do the act that was deceptive and/or fraudulent, namely, to

4 market, distribute and sell Trex products.

5    72. To this day, Trex continues to violate the CLRA by concealing the

6 defective nature of its Trex products and by failing or refusing to reveal to Class members that the

7 cause of the problems with the Trex products is an inherent defect and not a result of improper

8 use or maintenance.

9    73. Plaintiffs, on behalf of themselves and all similarly situated, demand

10 judgment against Trex under the CLRA for injunctive relief in the form of restitution and/or

11 proportional disgorgement of funds paid to Trex to purchase Trex products or repair and and/or

12 replace defective decking material, an injunction requiring Trex to replace the Trex products free

13 of charge, and an award of attorneys' fees.

14    74. Venue is proper pursuant to Civil Code § 1780(c) because Trex does

15 business in this county. A Declaration of Plaintiff Ross establishing this Court as the proper

16 venue for this action is attached hereto as Exhibit A.

17    75. At the time this Complaint is being filed, Plaintiffs are submitting a CLRA

18 notice letter to Trex's counsel, a copy of which is attached hereto as Exhibit B. If Trex fails to

19 provide appropriate relief for its violations of CLRA §§ 1770(a)(5), (7) and (9) within 30 days of

20 receipt of Plaintiffs' notification, in accordance with Civ. Code § 1782(b), Plaintiffs are entitled,

21 under CLRA § 1780, to recover or obtain any of the following relief for Trex's violations of

22 CLRA §§ 1770(a)(5), (7) and (9):

23      actual damages under Civ. Code Section 1780(a)(1);

24      punitive damages under Civ. Code Section 1780(a)(4);

25      attorneys' fees and costs under Civ. Code Section 1780(d); and

26      any other relief the Court deems proper under Civ. Code Section
         1780(a)(5).

27

28

1                          **SECOND CLAIM FOR RELIEF**

2    **(Violation of Bus. & Prof. Code §§ 17200 & 17500 (the "Unfair Business Practices Act"))**

3            76.    Plaintiffs incorporate by reference the allegations contained in preceding

4    paragraphs of this Complaint.

5            77.    Business & Professions Code § 17200 prohibits acts of "unfair

6    competition." As used in this section, "unfair competition" encompasses three distinct types of

7    misconduct: (a) "unlawful...business acts of practices;" (b) "unfair or fraudulent business acts of

8    practices;" and (c) "unfair, deceptive or misleading advertising."

9            78.    Trex committed an unlawful business act or practice in violation of the

10   Unfair Business Practices Act, Business and Professions code § 17200, *et seq.*, when it violated

11   the CLRA as alleged in Paragraphs 59-75, above.

12           79.    Trex violated the CLRA's proscription against misrepresentation of the

13   characteristics, use, benefit, or quality of goods by affirmatively misrepresenting at all times to

14   Plaintiffs, Class members, and everyone in the chain of distribution in all of its broadly

15   disseminated marketing and advertising, that its Trex products are moisture resistant and are

16   superior to wood products with respect to splintering and other qualities when, in fact, they are

17   not.

18           80.    Trex committed unfair and fraudulent business acts and practices in

19   violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and

20   17500, *et seq.*, by actively concealing and omitting from its advertising, marketing and other

21   communications (including, *inter alia*, concealments and omissions in Trex's communications

22   with wholesalers, retailers, and others in the chain of distribution that were ultimately passed on

23   to Plaintiffs and the Class) material information about the defective nature of the Trex decking

24   products in a manner that is deceptive and likely to deceive consumers and the public.

25           81.    Trex disseminated unfair, deceptive, untrue and/or misleading advertising

26   in violation of the Unfair Business Practices Act, Business & Professions Code §§ 17200 and

27   17500, *et seq.*, when it concealed and/or failed to disclose the true defective nature of the Trex

28

09/30/2008  13:12 FAX  14153511    ☒ 017/028

1    decking products in its advertising, marketing, and other broadly disseminated representations

2    containing statements that its products were of a certain quality or standard when they were not.

3          82.    To this day, Trex continues to violate the Unfair Business Practices Act by

4    continuing to actively conceal the defective nature of the Trex decking by representing to

5    Plaintiffs and members of the Class that the defects result from improper installation or

6    maintenance.

7          83.    As a direct and proximate cause of Trex's violation of the Unfair Business

8    Practices Act, Plaintiffs and the Class have suffered or will suffer harm in that they own Trex

9    products that will suffer delamination and other defects, and will be required to incur costs to

10    clean and replace the defective decking products.

11          84.    As a proximate result of Trex's violation of the Business and Professions

12    Code § 17200, *et seq.*, Trex has been unjustly enriched at the expense of Plaintiffs and the Class

13    and should be required to make restitution to Plaintiffs and the Class or disgorge its ill-gotten

14    profits pursuant to Sections 17203 of the Business & Professions Code.

15          85.    Plaintiffs, on behalf of themselves and for all others similarly situated,

16    demand judgment against Trex for injunctive relief in the form of restitution, and/or proportional

17    disgorgement of funds paid to Trex to purchase the Trex products, and/or disgorgement of funds

18    received by Trex from the purchase of replacement products, or injunctive relief in the form of

19    replacement of the defective products.

20    **THIRD CLAIM FOR RELIEF**

21    **(Breach Of Express Warranty)**

22          86.    Plaintiffs hereby incorporate by reference the allegations contained in the

23    preceding paragraphs of this Complaint.

24          87.    Trex's warranty provides that "for a period of twenty-five (25) years from

25    the date of original purchase, under normal residential use and service conditions, Trex products

26    shall be free from material defects in workmanship and materials, and shall not check, split,

27    splinter, rot or suffer structural damage from termites or fungal decay."

28    <http://www.trex.com/warranty>

78379).2

– 13 –

88.    Trex further expressly warranted that "Trex takes the natural beauty of wood, but leaves behind all the rotting and splintering."

<http://www.trex.com/decking/default.aspx>

89.    Trex also provided consumers with photographs, samples or models of decking and fencing that did not show any signs of the Defects.

90.    The warranties, affirmations, promises, assurances, descriptions and models provided by Trex were the basis of the bargain for Plaintiffs and the Class Members in purchasing or acquiring the Trex products.

91.    Trex has breached its express warranty to Plaintiffs and Class Members in that the Trex products were defective from the day they were sold and are substantially certain to prematurely experience delamination and other manifestations of the Defects.

92.    Trex has been put on notice of its breach of express warranties by Plaintiffs and Class members through warranty claims previously made and through notice provided by Plaintiffs and Class Members prior to the filing of this Complaint.

93.    As a direct result of the failure of the Trex products to perform as warranted, Plaintiffs and the Class have incurred and will continue to incur expenses to maintain, clean, and replace Trex decking products.

94.    Any contractual language contained in Trex's express warranty that attempts to limit remedies is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranties to fail of their essential purpose, and is, thus, unconscionable and void.

95.    Language in Trex's limited warranty that purports to exclude the exact types of Defects that affects Plaintiffs' and proposed Class members' Trex products is unilaterally imposed in a contract of adhesion that is typically provided after the sale, and is therefore unconscionable and causes the entire warranty to fail of its essential purpose.

1       **FOURTH CLAIM FOR RELIEF**

2                **(Unjust Enrichment)**

3               96.     Plaintiffs hereby incorporate by reference the allegations contained in the

4       preceding paragraphs of this Complaint.

5               97.     Trex received monies as a result of Plaintiffs' and Class members'

6       purchases of Trex products, and wrongfully accepted and retained these benefits to the detriment

7       of Plaintiffs and Class members.

8               98.     Trex's enrichment at the expense of Plaintiffs and Class members was

9       unjust.

10              99.     As a result of Trex's wrongful conduct, Plaintiffs and the Class are entitled

11      to restitution from and institution of a constructive trust disgorging all profits, benefits, and other

12      compensation obtained by Trex, plus attorneys' fees, costs, and interest thereon.

13      **IX.     RELIEF REQUESTED**

14              Plaintiffs, on behalf of themselves and all others similarly situated, request the

15      Court enter judgment against Trex, as follows:

16              100.    An order certifying the proposed plaintiff Class, designating Plaintiffs as

17      the named representatives of the Class, and designating the undersigned as Class Counsel;

18              101.    A declaration that Trex is financially responsible for notifying all Class

19      members of the problems with Trex material;

20              102.    An order enjoining Trex from further deceptive advertising, marketing,

21      distribution, and sales practices with respect to Trex and to remove and replace Plaintiffs' and

22      Class members' decks with a suitable alternative decking material of Plaintiffs' and Class

23      members' choosing;

24              103.    An award to Plaintiffs and the Class of compensatory, exemplary, and

25      statutory damages, including interest thereon, in an amount to be proven at trial;

26              104.    A declaration that Trex must disgorge, for the benefit of the Class, all or

27      part of the ill-gotten profits it received from the sale of Trex material, or to make full restitution to

28      Plaintiffs and the members of the Class;

783791.2                              - 15 -

1   105.   An award of attorneys' fees and costs, as allowed by law;

2   106.   An award of pre-judgment and post-judgment interest, as provided by law;

3   107.   For leave to amend the Complaint to conform to the evidence produced at

4   trial; and

5   108.   Such other or further relief as may be appropriate under the circumstances.

6                          **DEMAND FOR JURY TRIAL**

7   109.   Plaintiffs demand a trial by jury of any and all issues in this action so

8   triable.

9

10   DATED this 30th day of September, 2008.

11                                          Jonathan D. Selbin (State Bar No. 170222)
                                            jselbin@lchb.com
12                                          Kristen E. Law (State Bar No. 222249)
                                            klaw@lchb.com
13                                          LIEFF, CABRASER, HEIMANN &
                                            BERNSTEIN, LLP
14                                          275 Battery Street, 30th Floor
                                            San Francisco, CA 94111-3336
15                                          Telephone:   (415) 956-1000
                                            Facsimile:   (415) 956-1008
16

17                                          Elizabeth A. Alexander
                                            LIEFF, CABRASER, HEIMANN &
18                                          BERNSTEIN, LLP
                                            150 Fourth Avenue, North, Suite 1650
19                                          Nashville, TN 37219-2423
                                            Telephone:   (615) 313-9000
20                                          Facsimile:   (615) 313-9965

21
                                            Richard S. Lewis
22                                          James J. Pizzirusso
                                            COHEN, MILSTEIN, HAUSFELD & TOLL,
23                                          PLLC
                                            1100 New York Avenue, N.W.
24                                          Suite 500, West Tower
                                            Washington, DC 20005
25                                          Telephone:   (202) 408-4600
26                                          Facsimile:   (202) 408-4699

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert D. Gary
Jori Naegele
GARY, NAEGELE & THEADO, LLC
446 Broadway
Lorain, OH  44052-1797
Telephone:    (440) 244-4809
Facsimile:    (440) 244-3462

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT

# Exhibit
# A

1  Jonathan D. Selbin (State Bar No. 170222)
   jselbin@lchb.com
2  Kristen E. Law (State Bar No. 222249)
   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3  275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
4  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
5
   Attorney for Plaintiffs and the Proposed Class
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF SANTA CRUZ

10

11  THOMAS MABREY, JR. and ERIC                CASE NO.: _____
    ROSS, individually and on behalf of all
12  others similarly situated,                 **CLASS ACTION**

13                 Plaintiffs,

14        v.                                   **VENUE AFFIDAVIT OF ERIC ROSS**

15  TREX COMPANY, a Delaware
    corporation,
16
                   Defendant.
17

18

19        I, ERIC ROSS, hereby declare and state as follows:

20              1.      I am over the age of 18. The facts contained in this declaration are based

21  on my personal knowledge, and if called upon to do so, I could and would testify competently

22  hereto.

23              2.      I am, and have at all times relevant to this action been, a resident of the

24  County of Santa Cruz, California.

25

26

27

28

783875.1                              - 1 -
                          VENUE AFFIDAVIT OF ERIC ROSS

3.      In or around June 2005, I purchased Trex Accents decking material in the approximate amount of $2,926.84. I purchased this decking material from a Santa Cruz County store called Lumbermens. In or around January 2008, the Trex decking boards began displaying signs of delamination. This decking material is the subject of my claims against the Trex Company.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 27, 2008

By: _____
           ERIC ROSS

783875 1                              - 2 -

VENUE AFFIDAVIT OF ERIC ROSS

**EXHIBIT B**

09/30/2008  13:13  FAX   141535113                                    026/028

# LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

### ATTORNEYS AT LAW

JONATHAN D. SELBIN
PARTNER

780 THIRD AVENUE, 48TH FLOOR
NEW YORK, NEW YORK 10017-2024
TELEPHONE: (212) 355-9500
FACSIMILE: (212) 355-9592
mail@lchb.com
www.lchb.com

SAN FRANCISCO
WASHINGTON, D.C.
BEVERLY HILLS
NASHVILLE

September 30, 2008

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Andrew Ferrari
Chairman
Trex Company, Inc.
160 Exeter Drive
Winchester, VA 22603-8614

William Gupp
Senior Vice President/General Counsel
Trex Company, Inc.
160 Exeter Drive
Winchester, VA 22603-8614

Re:   Notice and Demand Letter Re: Trex Decking Delamination and Moisture
Defects

To Trex Company, Inc.:

Together with our co-counsel, Cohen, Milstein, Hausfeld & Toll, PLLC and Gary, Naegele & Theado, LLC, we represent Eric Ross, Thomas Mabrey, Jr. and Dianna Spalliero. Pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.* (specifically, §§ 1782(a)(1) and (2)), Mr. Ross, Mr. Mabrey and Ms. Spalliero, on behalf of themselves and all other similarly situated consumers nationwide (collectively, the "Class"), through their undersigned counsel, hereby notify you that Trex Company, Inc. ("Trex") is alleged to have violated the CLRA by warranting, marketing, advertising, and selling Trex decking products that Trex knew were inherently defective because when installed and maintained in accordance with Trex's instructions, the decking products experience delamination and moisture-related defects (the "Defects") and are substantially certain to fail well before their warranted and expected useful life. We hereby demand that Trex correct, repair, replace or otherwise rectify the goods within 30 days from your receipt of this letter.

Mr. Ross, a resident of Santa Cruz, Santa Cruz County, California, purchased Trex decking in or around June 2005, for approximately $2,926.84. The entire cost of his deck, which he installed himself, totaled approximately $5,000. In or about January 2007, Mr. Ross's deck began to manifest the delamination Defect. An expert has inspected Mr. Ross's deck and confirmed that the delamination Defect has manifested.

Trex Company, Inc.
September 30, 2008
Page 2

Mr. Mabrey, a resident of Inverness, Cook County, Illinois, purchased Trex Escape decking material through a contractor in or around March 2005. He paid approximately $13,600 for the decking materials and labor. Several months after his deck was installed, Mr. Mabrey's deck began to manifest the moisture-related Defect. An expert has inspected Mr. Mabrey's deck and has confirmed that the moisture-related Defect has manifested.

Ms. Spalliero is a resident of Chicago, Cook County, Illinois. She purchased Trex decking material through a contractor in approximately June 2007 for approximately $12,000, inclusive of materials and labor. Roughly one year after her deck was installed, it started to manifest the moisture-related Defect. An expert has inspected Ms. Spalliero's deck and has confirmed that the moisture-related Defect has manifested.

The Defects have caused significant financial consequences for our clients and consumers throughout the country. Trex knew of the Defects, and concealed them from consumers and the public in a manner that violates the CLRA.

Trex's misrepresentations and its active concealment of and failure to disclose the Defects in warranting, marketing, advertising, and selling Trex decking constitute the following violations of the CLRA:

1. Trex has represented that its goods have characteristics, uses or benefits that they do not have (§ 1770(a)(5));

2. Trex has falsely represented that its goods are of a particular standard, quality or grade when they are of another (§ 1770(a)(7)); and

3. Trex has advertised its goods with the intent not to sell them as advertised (§ 1770(a)(9)).

Pursuant to Section 1782 of the CLRA, and based on the foregoing, we hereby demand that within thirty (30) days of receiving this letter, Trex agree to replace the Trex decking owned by Plaintiffs and others like them. Specifically, we demand that Trex: (1) replace free of charge all defective Trex decking owned by any member of the Class, including the cost of labor for replacement; or (2) agree to reimburse any and all Class members who own Trex decking with a manifest Defect for the full amount they paid for the Trex decking materials, plus the labor costs that were required to install the decking and that will be required to remove it.

Please be advised that should Trex refuse this demand, Mr. Ross, Mr. Mabrey and Ms. Spalliero will seek monetary damages for themselves and the Class, as well as an award of injunctive relief, restitution, punitive damages, attorneys' fees and costs, and any other relief a court deems proper.

If you have any questions regarding this notice and demand, feel free to contact me at (212) 355-9500.

Trex Company, Inc.
September 30, 2008
Page 3

Very truly yours,

Jonathan D. Selbin

cc:     Elizabeth A. Alexander
        Richard S. Lewis
        James J. Pizzirusso
        Robert D. Gary
        Jori Naegele
        Patrick J. Perrone

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**

| | |
|---|---|
| Santa Cruz Branch<br>701 Ocean Street, Room 110,<br>Santa Cruz, CA 95060 | Watsonville Branch<br>1 Second Street, Room 300<br>Watsonville, CA 95076 |

*For Court Use Only*

**FILED**

SEP 3 0 2008

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

PLAINTIFF:   **ERIC ROSS**

DEFENDANT:  **TREX COMPANY INC**

**CASE MANAGEMENT INFORMATION AND SETTING**

CASE NO:
**CISCV161553**

This case is in Santa Cruz County's Case Management Program.  It is the Duty of each party to be familiar with the california rules of court and the date, time and place of the first case management conference.

This notice must be served with the summons on all defendants and cross-defendants.  Notice of any other pending case management conference must be served on subsequently named defendants and cross-defendants.

**ATTENTION DEFENDANT:  YOU HAVE 30 DAYS AFTER THE SUMMONS IS SERVED ON YOU TO FILE A RESPONSE TO THE COMPLAINT. THE DATE BELOW DOES NOT EXTEND THE TIME TO FILE A RESPONSE.   SEE THE SUMMONS FOR INSTRUCTIONS FOR RESPONDING TO THE SUMMONS AND COMPLAINT.**

---

**The first Case Management Conference hearing date is:**

**Date: 01/28/09**          **Time:  8:29**          **Department No.:    4**

Address of the Court: ☒ 701 Ocean Street, Santa Cruz, California          ☐ 1 Second Street, Watsonville, California

---

*Telephonic court appearances are provided through CourtCall to the court.  To make arrangments to appear at the Case Management Conference by telephone, please call the program administrator for CourtCall at (310) 572-4670 or (888) 882-6878 at least five (5) court days prior to the hearing.  DO NOT CALL THE COURT.*

# THE LAWYER'S PLEDGE

In order to raise the standards of civility and professionalism among counsel and between the Bench and the Bar, I hereby pledge the following:

1.  To at all times comply with the California Rules of Professional Conduct;
2.  To honor all commitments;
3.  To be candid in all dealings with the court and counsel;
4.  To uphold the integrity of our system of justice and not compromise personal integrity for the sake of a client, case or cause;
5.  To seek to accomplish the client's legitimate goals by the most efficient and economical methods possible;
6.  To act in a professional manner at all times, to be guided by a fundamental sense of fair play in all dealings with counsel and the court, and to be courteous and respectful to the court;
7.  To be on time;
8.  To be prepared for all court appearances – to be familiar with all applicable court rules;
9.  To adhere to the time deadlines set by statute, rule, or order;
10. To avoid visual displays of pique in response to rulings by the court;
11. To discourage and decline to participate in litigation or tactics that are without merit or are designed primarily to harass or drain the financial resources of the opposing party;
12. To avoid any communications with the judge concerning a pending case unless the opposing party or lawyer is present, or unless permitted by court rules or otherwise authorized by law;
13. To refrain from impugning the integrity of the judicial system, its proceedings, or its members;
14. To treat all court personnel with the utmost civility and professionalism;
15. To remember that conflicts with opposing counsel are professional and not personal – vigorous advocacy is not inconsistent with professional courtesy;
16. To refrain from derogatory statements or discriminatory conduct on the basis of race, religion, gender, sexual orientation or other personal characteristic;
17. To treat adverse witnesses and litigants with fairness and due consideration;
18. To conduct discovery proceedings as if a judicial officer were present;
19. To meet and confer with opposing counsel in a genuine attempt to resolve procedural and discovery matters;
20. To not use discovery to harass the opposition or for any other improper purpose;
21. To not arbitrarily or unreasonably withhold consent to a just and reasonable request for cooperation or accommodation;
22. To not attribute to an opponent a position not clearly taken by that opponent;
23. To avoid unnecessary "confirming" letters and to be scrupulously accurate when making any written confirmation of conversations or events;
24. To not propose any stipulation in the presence of the trier of fact unless previously agreed to by the opponent;
25. To not interrupt the opponent's legal argument;
26. To address opposing counsel, when in court, only through the court;
27. To not seek sanctions against or disqualification of another lawyer to attain a tactical advantage or for any other improper purpose;
28. To not schedule the service of papers to deliberately inconvenience opposing counsel;
29. To refrain, except in extraordinary circumstances, from using the fax machine to demand immediate responses for opposing counsel.

# ADR INFORMATION PACKAGE

Included in this package:

- Cover Page

- Alternative Dispute Resolution Program Notice

- Local Form SUPCV 1012
  (Stipulation and Order to Attend Judicial Mediation or Private Arbitration)

## ATTENTION PLAINTIFFS/CROSS-COMPLAINANTS

PLAINTIFFS SHALL SERVE A COPY OF THIS ADR
INFORMATION PACKAGE ON EACH DEFENDANT
ALONG WITH THE COMPLAINT. CROSS-COMPLAINANTS
SHALL SERVE A COPY OF THIS ADR INFORMATION
PACKAGE ON ANY NEW PARTIES TO THE ACTION
ALONG WITH THE CROSS-COMPLAINT
(CRC 3.221)

SUPCV-1012 (Rev. 1/07)

Page 1 of 3
Local Rule 7.1.02

STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
OR PRIVATE ARBITRATION

TO:    ALL CIVIL LITIGANTS

RE:    JUDICIAL MEDIATION PROGRAM OF SANTA CRUZ OR OPTION FOR
         PRIVATE ARBITRATION

Alternate Dispute Resolution (ADR) is a process, other than formal litigation, in which a neutral person assists the parties in resolving their dispute. Santa Cruz County's ADR process is Judicial Mediation. If the parties agree to Mediation, it is the policy of this Court to assign appropriate cases to mediation without making a determination of the value of the case.

Appropriate cases will be assigned to Judicial Mediation from the Case Management Conference Calendar. The parties may stipulate to Mediation prior to the Case Management Conference by written stipulation on local form SUPCV 1012. Case Management Conference Statements and requests for continuances should be submitted at least ten days in advance of the hearing.

FOR MORE INFORMATION REGARDING SANTA CRUZ COUNTY'S MEDIATION PROGRAM, SEE LOCAL RULE 7.1 OR CONTACT THE CIVIL CALENDAR DEPARTMENT (SANTA CRUZ) AT (831) 420-2200 OR THE WATSONVILLE BRANCH AT (831) 786-7200.

You may also stipulate to use a private arbitration or mediation service with the same local form 1012. This local form is required to ensure that the case is tracked properly by Court staff.

SUPCV-1012 (Rev. 1/2008)                                                                 Page 2 of 3
                                                                                    Local Rule 7.1.02
                STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
                            OR PRIVATE ARBITRATION

| | | |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS):* | TELEPHONE NO.: | *For Court Use Only* |
| ATTORNEY FOR *(NAME):* | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ

☐ Santa Cruz   ☐ Watsonville Branch
   701 Ocean Street, Room 110      1430 Freedom Boulevard
   Santa Cruz, CA 95060             Watsonville, CA 95076

Plaintiff/Petitioner:

Defendant/Respondent:

| | |
|---|---|
| STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION OR PRIVATE ARBITRATION<br>Must be filed 10 days before Case Management Conference | CASE NO. |

FOR GOOD CAUSE as stated in the attached supporting declaration,
CASE MANAGEMENT CONFERENCE CURRENTLY SET FOR: (DATE)_____
CHECK ONLY ONE BOX:

1. ( ) The parties stipulate to court ordered mediation.

2. ( ) The parties stipulate to private mediation or arbitration, to be arranged by the parties and completed within 120 days of the current CMC date stated above. The parties agree that such process shall be a good faith attempt to resolve the case.

**SIGNATURES OF COUNSEL:**

_____      TYPE NAME: _____

DATE: _____      ATTORNEY FOR: _____

_____      TYPE NAME: _____

DATE: _____      ATTORNEY FOR: _____

☐ ADDITIONAL SIGNATURES IN ATTACHMENT "A"

**ORDER**

BASED ON THE STIPULATION OF THE PARTIES, THE SUPPORTING DECLARATION,
AND FINDING GOOD CAUSE, THE APPLICATION IS HEREBY GRANTED

☐ SET FOR JUDICIAL MEDIATION ON: _____ AT: _____ a.m./p.m.

☐ VACATE CMC CURRENTLY SET FOR: _____ AT: _____ a.m./p.m.

Date: _____      _____
                                   **JUDGE OF THE SUPERIOR COURT**

SUPCV-1012 (Rev. 1/07)                                    Page 3 of 3
                                                          Local Rule 7.1.02

STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
OR PRIVATE ARBITRATION