** E-filed 7/30/2009 **

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ERIC ROSS and BRADLEY S. HURETH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TREX COMPANY, INC., a Delaware Corporation,<br><br>Defendant. | Case Number C 09-670 JF (PVT)<br><br>ORDER[1] GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION<br><br>[re: docket no. 31] |

Plaintiffs move for 1) preliminary approval of settlement; 2) provisional class certification and designation of Plaintiffs as class representatives; 3) approval of the notice of settlement and claim forms; and 4) the setting of a final settlement approval hearing.  The motion will be granted as set forth below.

### I. BACKGROUND

Defendant ("Trex") is a company that manufactures wood-composite decking products ("the Product").  The Product was covered by a 25-year limited residential warranty that guaranteed that it would be free from material defects and would not "check, split, splinter, rot or

---

[1]  This disposition is not designated for publication in the official reports.

1  suffer structural damage from termites or fungal decay."  The warranty contains two limitations

2  clauses with respect to damages: 1) "The warranty shall not cover and Trex shall not be

3  responsible for costs and expenses incurred with respect to the removal of defective Trex

4  products or the installation of replacement materials, including but not limited to labor or freight"

5  and 2) "UNDER NO CIRCUMSTANCES WILL TREX BE LIABLE FOR SPECIAL,

6  INCIDENTAL OR CONSEQUENTIAL DAMAGES. . . AND TREX'S LIABILITY WITH

7  RESPECT TO DEFECTIVE PRODUCTS SHALL IN NO EVENT EXCEED THE

8  REPLACEMENT OF SUCH PRODUCTS OR REFUND OF THE PURCHASE PRICE."

9  However, the warranty  qualified these disclaimers as follows: "Some states do not allow the

10  exclusion or limitation of consequential damages, so the above limitation or exclusion  may not

11  apply to you."

12      Plaintiffs have brought a consumer protection and breach of warranty class action

13  alleging that some of the Product was defectively manufactured and that Trex misrepresented its

14  quality.

15  **A.    Procedural History and Settlement Negotiations**

16      Counsel for Plaintiffs claim that they began investigating complaints related to the

17  Product in July 2007.  (Selbin Decl. at ¶ 13).  In May 2008, counsel for Plaintiffs contacted Trex

18  by letter regarding two types of defects: "surface flaking" and "mold spotting."  On June 9, 2008,

19  counsel for Plaintiffs met in person with Trex representatives regarding the alleged defects.  Both

20  sides agreed to a tolling agreement to preserve class members' rights during settlement

21  discussions.  *Id*. at ¶ 14.  The  negotiations lasted from June 2008 through February 2009, with a

22  total of six in-person meetings as well as informal discussions by telephone and e-mail.  *Id*. at ¶

23  19-23.  Plaintiffs claim that there were significant disagreements regarding the scope of the

24  defect, the extent of the damages, and the coverage provided by the warranty, leading to several

25  apparent impasses.  On September 30, 2008, Plaintiffs filed a complaint in state court asserting a

26  nationwide class action under California law. (Notice of Removal, Ex. A).  They alleged both

27  surface flaking and mold spotting.  At the same time, the parties continued to work towards a

28

2

settlement. Plaintiffs claim that it became apparent at a meeting on November 20, 2009 that only the surface flaking claim could be settled. Accordingly, on January 6, 2009, Plaintiffs amended their complaint to remove the mold spotting claim, intending to preserve it for a separate action. (Selbin Decl. at ¶ 22). In addition, the amended complaint split the original nationwide class in two, defining a California class governed by California law and a nationwide class governed by Nevada law. (Notice of Removal, Ex. B). On January 28, 2009, the parties reached an agreement in principle for a nationwide settlement as to surface flaking with respect to all material terms except for costs and attorneys' fees. On February 5, 2009, the parties entered into a memorandum of understanding setting out these terms. The case was removed to this Court on February 13, 2009. On April 6, 2009, the parties finalized a settlement agreement ("Settlement").

On January 13, 2009, Mark Okano filed a nationwide class action against Trex in the Western District of Washington alleging defects in the Product. *Okano v Trex Company Inc.*, Case No. 3:09-cv-0187-WHA. On February 9, 2009, counsel for Plaintiffs in the instant action alerted Okano to the Settlement and promised to "share the particulars as soon as possible." (Berman Decl., Ex. B). Okano claims that he was not provided with these particulars until May 26, 2009. (Lopez Decl. at ¶ 6). He also asserts that despite repeated requests, he was not provided with copies of some of the materials that were considered in reaching the settlement. *Id* at ¶ 2. Okano estimates that the cost of repairing his deck would be $10,800, plus tax, and that the cost to his co-plaintiff, Sandra Ding, to repair her deck would be $3200, plus tax, excluding the cost of replacement decking. (Mark Okano's Mem. in Opp'n to Mot. For Preliminary Approval of Settlement, p. 7). He claims that neither he nor Ding was provided with the warranty at the time of purchase or informed of any of its terms. (Mark Okano 's Mem. in Resp. to Pls. Notice of Filing Of Revised Docs. Relating to Proposed Settlement, p. 1, fn 1). On May 26, 2009, the Court related the Okano case to the instant case.

**B.    Investigation and Discovery**

Plaintiffs in the instant action assert that they have thoroughly investigated their case.

1   Plaintiffs' expert conducted multiple deck inspections with Trex's research and development

2   employees in attendance.  In addition to substantial testing regarding the nature and cause of

3   mold spotting, experts retained by Plaintiffs' counsel conducted bulk sampling of the Product

4   that exhibited surface flaking.  (Selbin Decl. at ¶ 22).  Plaintiffs also discussed their claims with a

5   wood-plastic composites expert.  Plaintiffs claim that they obtained more than 1000 pages of

6   documents, including product formula information, laboratory testing results, studies conducted

7   by Trex regarding both the mold spotting the and the surface flaking defects, Trex's research and

8   development information, marketing materials, and internal documents regarding complaints and

9   warranty claims related to both mold spotting and surface flaking, as well as insurance

10  information.  *Id*. at ¶ 27.  However, Okano contends that the documents provided to him

11  numbered far less than 1000 and were subject to onerous restrictions.  Plaintiffs were in contact

12  with approximately 450 purchasers of the Product, a large percentage of whom complained of

13  surface flaking.  *Id*. at ¶ 28.

14  **C.     Terms of Settlement**

15         The Settlement class includes all persons in the United States who own or owned a

16  structure composed of Product manufactured at Trex's Fenley, Nevada plant between January 1,

17  2002 and December 31, 2007.  (Notice of Filing of Revised Settlement Agreement, Class Notice

18  and Proposed Order, Ex. A, p. 9).  Government entities are excluded.  *Id*. at pg. 10.  Class

19  members may choose to opt out within sixty days from the last day that notice is sent.  They must

20  provide a written request with contact information and an express statement of their desire to be

21  excluded.  *Id*. at p. 17.  Class members will be divided into three groups - those who have made

22  no prior surface flaking claims, those who have made such claims, and the class representatives.

23  The first group will be able to file a claim form at any time prior to the expiration of their limited

24  warranty.  Members of this group will receive replacement Product or its retail cash value

25  equivalent.  If a class member has experienced failure in more than fifty percent of a structure,

26  the member will receive replacement Product for the entire structure.  *Id*. at pp. 12-13.  In

27  addition, members will receive, for labor costs, $0.18 per linear foot of Product board to be

28

4

replaced.  On average, each class member will receive $225.00 in labor costs.  This estimate is based upon the average-sized deck in the typical Trex order.  *Id.* at p. 13.  The group of prior claimants will have only six months from the last day notice is published to submit claim forms.  These members' recovery for labor will also be limited to $225.00.  *Id.*  The two class representatives, in addition to any other recovery to which they are entitled, will receive a cash payment of $7500.  *Id.* at p. 28.  There will be a neutral appeals process for the denial of any claim.  *Id.* at p. 15.  The parties have agreed to attorneys' fees and costs in a total amount of $1,250,000.  *Id.* at p. 21

At the hearing on the instant motion on July 10, 2009, the parties agreed to modify the settlement to clarify that it does not exclude claims for structural damage.  On July 15, 2009, they filed an amended settlement excluding from release any claims in which "a single piece of Trex Product is broken completely through from top to bottom into two or more separate pieces." *Id.* at p. 8.

## II. LEGAL STANDARD

### A.    Preliminary Approval

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Circ. 1992).  There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Id.*  Preliminary approval of a class action settlement requires that it be "within the range of reasonableness."  Alba Conte et al., *Newberg on Class Actions* § 11.25, at 11-91 (4th ed. 2002).  The Court must consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Linerboard Antitrust Litigation*, 296 F.Supp.2d 568 (E.D. Pa. 2003).

### B.    Class Certification

Federal Rule of Civil Procedure 23(a) permits a class action where: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

Case No. C 08-3953-JF (PVT)
ORDER  GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS
CERTIFICATION
(JFEx1)

1  common to the class, (3) the claims or defenses of the representative parties are typical of the

2  claims or defenses of the class; and (4) the representative parties will fairly and adequately

3  protect the interests of the class."  In addition, the class action must satisfy one of the provisions

4  of Rule 23(b).  Satisfying 23(b)(3) requires that "the questions of law or fact common to class

5  members predominate over any questions affecting only individual members, and that a class

6  action is superior to other available methods for fairly and efficiently adjudicating the

7  controversy."  Fed. R. Civ. P. 23(b)(3).

8  **III. DISCUSSION**

9  **A.     Preliminary Approval**

10        The process by which the Settlement was negotiated was unobjectionable.  There were

11  extensive meetings among the parties and their counsel, and the number of disagreements

12  suggests strongly that the negotiations were at "arm's length."  There was substantial discovery,

13  with expert investigation of the defects and review of voluminous documents.  Plaintiffs' counsel

14  are experienced in this type of litigation.  There is nothing to indicate collusion, especially in

15  light of the documented record of adversarial negotiations.  Class representative stipends are

16  customary in such cases, and a stipend of $7,500 recently was approved in a similar case dealing

17  with composite decking materials.  *Pelletz v. Weyerhaeuser Corp.* 255 F.R.D. 537, 546 (W.D.

18  Wash. 2009).  Okano claims that there is no justification for attorneys' fees of $1,250,000 before

19  any significant litigation.  However, counsel invested extensive time and expense invested by

20  counsel even before commencing litigation, and contingency representation is common in such

21  cases; at the least, the amount is not unreasonable on its face.  Moreover, the fees are separable

22  from the rest of the settlement, and a motion to approve them will be considered at the final

23  approval hearing.

24        Okano raises several objections to the substance of the settlement.  He claims that notice

25  is defective, because class members have no way of determining whether their Product was

26  manufactured during the specified time period at Trex's Fernley, Nevada plant.  However, class

27  members need not make this determination, because for the purposes of the Settlement, Trex will

28

6

1   presume that any Product that exhibits surface flaking was manufactured at the Fernley plant

2   during this time. (Fairbanks Decl. at ¶ 7).  Okano also contends that the inclusion of the Fernley

3   requirement in the settlement will discourage viable claims by class members uncertain as to

4   whether they qualify.  However, the parties' definition of the class is both factually accurate and

5   necessary to set the bounds of the Settlement, and thus is within the range of reasonableness.

6       Okano's most serious objection is that the recovery for class members is unreasonably

7   small.  He argues that the recovery should be valued only at the average of $225.00 provided for

8   labor costs, since replacement of the Product already is required by the terms of the warranty.  He

9   notes that $225.00 is insufficient to fix anyone's deck.  However, a settlement by definition

10  requires compromise, and Plaintiffs cannot expect to make a full recovery in the absence of

11  litigation.  "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

12  expensive litigation that induce consensual settlements. The proposed settlement is not to be

13  judged against a hypothetical or speculative measure of what might have been achieved by the

14  negotiators." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  The labor

15  costs, shipping,  and additional recovery for more than fifty percent failure exceed the basic

16  entitlement of the warranty and represent value gained through the Settlement.  Although Okano

17  believes that class members would be entitled to recover these additional amounts in any event,

18  as consequential damages, the warranty specifically excludes such damages.  While it is possible

19  that the disclaimer would be found unenforceable for unconscionability, such a result cannot be

20  presumed.  Limitations of consequential economic damages for consumers are not prima facie

21  unconscionable,  U.C.C. § 2-719(3), and such disclaimers in consumer warranties have been

22  upheld where there is no great disparity of bargaining power.  *E.g.*, *Zaremba v. Marvin Lumber*

23  *and Cedar Co.*, 458 F.Supp.2d 545 (N.D. Ohio 2006).

24      While there may well be merit in Mr. Okano's argument that class members were

25  provided with no meaningful choice about the terms of the warranty in this case[2], at the very least

26  there is a factual dispute regarding whether the warranty was made available at purchase.

27

28      [2]As in *Antz* v *GAF Materials Corp.*, 719 A.2d 758 (Pa. Super. Ct. 1998).

7

Plaintiffs' counsel, after extensive investigation and in light of their broad experience with consumer class actions, decided that a compromise was appropriate.

While Okano's objections to the Settlement are not trivial, the Settlement satisfies the lenient requirements for preliminary approval.  Class members will receive notice of the terms and have the opportunity to opt out or raise objections before final approval, and the Court will consider any such objections carefully before granting or denying final approval.

## B.   Class Certification

Class certification is appropriate here, since all four requirements of Rule 23(a) are met, and the action also satisfies the requirements of Rule 23(b).

Numerosity: The class of thousands of consumers means that joinder of all class members would be impracticable.

Commonality: There are multiple common questions of fact among class members, e.g. whether the Product was defectively manufactured and whether Trex misrepresented the quality of the Product.

Typicality: "A plaintiff's claim is representative if it arises from the same course of conduct and is based on the same legal theory as the claims of other class members." *Rosario v Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1999).  Okano argues that Plaintiffs' claims are not representative, because the class action was pled only under Nevada law.  Class members residing in other states could obtain multiple or punitive damages not available under the Nevada law under which Plaintiffs' claims have been asserted.  However, Plaintiffs claim that they intended to seek punitive damages available through Nevada consumer fraud law, and that they made a technical pleading error which can be remedied easily.  Moreover, punitive damages are not necessarily material to the value of a settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2009).  The proposed recovery is within the range of reasonable typicality, which is sufficient to grant provisional certification pending the final hearing.

Adequacy: In order to be adequate class representatives, Plaintiffs must show  "1) that [their] attorney [is] qualified, experienced, and generally able to conduct the litigation and 2) that

8

the suit will not be collusive and [their] interest antagonistic to those of the remainder of the class." *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Lit.*, 122 F.R.D. 251, 257 (C.D. Cal 1988).  Plaintiffs' counsel are sufficiently qualified and experienced and have shown willingness to devote effort and resources to the case.  Okano contends that the class action (and resulting settlement) is collusive, and that the Plaintiffs and their attorneys will profit at the expensive of the remainder of the class.  He asserts that Plaintiffs worked to minimize damages by pleading only under Nevada law and by failing to plead Magnusson-Moss Warranty Act violations.  However, the loss of attorneys' fees provided in Magnusson-Moss appears to be inconsequential, because the parties entered into a separate attorneys' fees agreement.  As discussed above, the evidence does not demonstrate collusion, class members will obtain potentially reasonable relief, and similar class representative stipends are standard.   Plaintiffs' extensive investigation and pursuit of the claim demonstrates, at least for present purposes, that they will fairly and adequately protect the interests of the class.

The action also satisfies 23(b)(3), since questions as to whether the Product was defectively manufactured or improperly advertised predominate over any questions affecting only individual class members.  A class action is superior to other available methods of adjudication because it allows an efficient determination of these common issues without unnecessary duplication of litigation.

Accordingly, the proposed class will be provisionally certified for settlement purposes.

Case No. C 08-3953-JF (PVT)
ORDER  GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS
CERTIFICATION
(JFEx1)

1

**ORDER**

2     Good cause therefor appearing, preliminary approval of the settlement and provisional

3 class certification are granted.

4     A hearing for final approval of the Settlement is scheduled for October 30, 2009.

5     IT IS SO ORDERED.

6

7 DATED: July 30, 2009

8                                              _____
                                               JEREMY FOGEL
9                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 08-3953-JF (PVT)
ORDER  GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS
CERTIFICATION
(JFEx1)

This Order has been served upon the following persons:

Elizabeth A. Alexander    ealexander@lchb.com, schase@lchb.com

James J. Pizzirusso    jpizzirusso@hausfeldllp.com

Jeff D Friedman    jefff@hbsslaw.com, katherined@hbsslaw.com, sf_filings@hbsslaw.com

Jonathan David Selbin    jselbin@lchb.com, mmacatee@lchb.com

Jori Naegele    jnaegele@gntlaw.com, office@gntlaw.com

Kim D. Stephens    kstephens@tousley.com, bkinsey@tousley.com

Matthew G. Ball    Matthew.Ball@klgates.com

Nimish Ramesh Desai    ndesai@lchb.com, tjackson@lchb.com, tsilva@lchb.com

Rachel Chatman    rachel.chatman@klgates.com, kathleen.fenton@klgates.com

Robert Gary    bgary@gntlaw.com, office@gntlaw.com

Steve W. Berman    steve@hbsslaw.com, heatherw@hbsslaw.com, robert@hbsslaw.com

Jeff D Friedman    jefff@hbsslaw.com, katherined@hbsslaw.com, sf_filings@hbsslaw.com

Jonathan David Selbin    jselbin@lchb.com, mmacatee@lchb.com

Kim D. Stephens    kstephens@tousley.com, bkinsey@tousley.com

Laura K Clinton    laura.clinton@klgates.com

Mary Bondy Reiten    mreiten@tousley.com, lgerheim@tousley.com

Matthew G. Ball    Matthew.Ball@klgates.com

Rachel Chatman    rachel.chatman@klgates.com, kathleen.fenton@klgates.com

11

1   Robert F Lopez      robl@hbsslaw.com

2

3   Steve W. Berman       steve@hbsslaw.com, heatherw@hbsslaw.com, robert@hbsslaw.com

4   Todd L Nunn      todd.nunn@klgates.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 08-3953-JF (PVT)
ORDER  GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND PROVISIONAL CLASS
CERTIFICATION
(JFEx1)