1  Jonathan D. Selbin (State Bar No. 170222)
   jselbin@lchb.com
2  Nimish R. Desai (State Bar No. 244953)
   ndesai@lchb.com
3  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
4  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
5  Telephone:     (415) 956-1000
   Facsimile:     (415) 956-1008
6
   Elizabeth A. Alexander (*pro hac vice*)
7  ealexander@lchb.com
   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
8  150 Fourth Avenue, North, Suite 1650
   Nashville, TN  37219-2423
9  Telephone:     (615) 313-9000
   Facsimile:     (615) 313-9965
10
   Attorneys for Plaintiffs and the proposed Class
11
   [*Additional Counsel listed on signature page*]
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16

17  DEAN MAHAN, J. STEPHEN TISDALE,          Case No.  5:09-CV-00670-JF
    STEVEN MCKENNA, JOHN
18  FORCELLA, SABRINA W. HASS and            **SECOND AMENDED CLASS ACTION
    DR. LANNY W. HASS, AMY BIONDI-           COMPLAINT**
19  HUFFMAN, AND BRIAN HATHAWAY

20               Plaintiffs,
                                             **DEMAND FOR JURY TRIAL_____**
21  v.
                                             Judge:      Hon. Jeremy Fogel
22  TREX COMPANY, INC.,

23               Defendant.

24

25      Plaintiffs Dean Mahan, J. Stephen Tisdale**,** Steven McKenna, John Forcella, Sabrina W.

26  Hass, and Dr. Lanny W. Hass, Amy Biondi-Huffman, and Brian Hathaway, ("Plaintiffs" or

27  "Named Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal

28  knowledge and on information and belief as follows:

**INTRODUCTION**

1.     Plaintiffs bring this action for monetary damages, declaratory and equitable relief, and restitution and/or disgorgement of profits on behalf of themselves and all similarly situated individuals and entities (the "Class") who own decking products manufactured, warranted, advertised and sold by Trex Company, Inc. ("Trex").

2.     Trex is a composite decking material marketed as a "low maintenance" alternative to traditional wood decking.  Trex decking products are inherently defective because when installed and maintained in accordance with Trex's instructions, they develop mold and/or fungal growth that causes unsightly and extensive discoloration.  This growth occurs regardless of proper installation, maintenance and cleaning, recurs quickly after being cleaned using the very process(es) Trex recommends, and cannot be prevented or remediated without unreasonable and excessive effort, if at all ("Defect" or "mold spotting defect").  Whereas a reasonable consumer would expect periodic efforts as needed to clear a "low maintenance" Trex deck of debris, and cleanings once every few years as a precaution to prevent the growth of mold and/or fungus, Trex decking requires cleanings far more frequently, and the cleanings are ineffective to remove or prevent the quick return of mold spotting and/or fungal growth.

3.     Trex has been manufacturing, warranting, advertising and selling Trex decking products it knew or should have known were inherently defective since approximately 1996, and perhaps before.

4.     As a result of the Defect, Plaintiffs and thousands of others in California, Florida, Illinois, New Jersey, North Carolina, Ohio, and Washington own inherently defective Trex decks and other structures that are failing to perform as warranted and advertised by Trex, did not get what they paid for, and have incurred or will incur thousands of dollars in damages to replace their decks.

**PARTIES**

5.     Plaintiff Dean Mahan resides in Citrus Heights, Sacramento County, California.  In approximately June 2005, Mr. Mahan purchased Trex decking materials for approximately $9,000.00 to replace a wooden deck on his home.  Mr. Mahan chose Trex decking

1    based on advertisements that described the products as "low maintenance."  Mr. Mahan had the

2    deck installed by a professional contractor in accordance with Trex's instructions.  Within one

3    year of purchase, the decking started exhibiting significant surface flaking.  Mr. Mahan contacted

4    a Trex service representative who instructed him to call Barodini Construction in Sacramento,

5    California.  Barodini Construction inspected and replaced the deck with more Trex materials.

6    Trex paid the for the replacement, including all labor expenses to remove the deck and install the

7    new one.  Within two years after it was installed, the second Trex deck started to developed

8    extensive mold spotting in the form of noticeably large black and gray spots.  Ms. Mahan again

9    contacted Trex and a customer service representative instructed him to purchase an expensive

10   chemical cleaner to clean the deck, which he did.  Since that time, Mr. Mahan has expended

11   considerable time and expense attempting to clean the mold spots using the methods

12   recommended by Trex, without success.  Despite his repeated efforts to clean the deck, the mold

13   and/or fungal growth and attendant discoloration continue to reappear.

14              6.      Plaintiff J. Stephen Tisdale resides in Gulfport, Pinellas County, Florida.

15   Mr. Tisdale originally purchased his Trex decking products in December of 2006.  He decided to

16   purchase Trex after seeing an advertisement in a trade publication and in Home Depot that

17   described the product as "low maintenance."  Prior to purchase, he also saw the stamp on the

18   product that represented there was a 25 year warranty; however, he was not provided and did not

19   see the actual written warranty.  At Trex's expense, the first materials were replaced because they

20   had staining that Trex attributed to the shipping of the product.  He installed his deck with the

21   replacement product in early 2007.  Mr. Tisdale purchased the Trex decking product from Home

22   Depot for roughly $3,625.  Mr. Tisdale is a building contractor who owns a construction

23   company, and his deck was installed in February 2007 by his professional carpenters under his

24   direct supervision and in accordance with Trex's instructions.  The total labor costs were

25   approximately $2,400.  Within two to three months of the installation of his deck, Mr. Tisdale's

26   deck developed extensive mold, mildew and/or fungal growth, and widespread discoloration in

27   the form of noticeably large black and gray spots.  In late 2007 or early 2008, Mr. Tisdale had his

28

1   deck cleaned with a cleaning product recommend by Trex.  The mold and/or fungal growth and

2   attendant discoloration reappeared after approximately one month.

3                   7.        Plaintiff Steven McKenna resides in Tinley Park, Cook County, Illinois.  In

4   approximately September or October 2005, Mr. McKenna purchased his deck from Fox Home

5   Center, Inc. in Frankfort, Illinois for approximately $14,000.  Mr. McKenna chose Trex decking

6   based on its reputation of being a low maintenance decking product.  Mr. McKenna does not

7   recall seeing Trex's warranty prior to purchasing his deck.  The deck was professionally installed

8   by Jim Jensen Construction for approximately $8,000.  Since the installation of his deck,

9   Mr. McKenna's deck developed extensive mold, mildew, and/or fungal growth, and widespread

10  discoloration in the form of noticeably large black and gray spots.  At the request of counsel for

11  Plaintiffs, a representative from Trex cleaned the deck in approximately August, 2008.  Shortly

12  after Trex's representative cleaned the deck, the mold spots returned.  Photographs of Mr.

13  McKenna's deck subsequent to the cleaning showing that the spots returned are attached as

14  Exhibit 1.

15                  8.        Plaintiff John Forcella resides in Howell, Monmouth County, New Jersey.

16  In June 2006, he installed a deck at his home made of Trex Accents decking material which he

17  purchased for approximately $3,000 at Woodhaven Lumber.  Mr. Forcella purchased Trex based

18  on representations by the sales person at Woodhaven Lumber and after looking at the

19  representations on Trex's website that the product was low maintenance.  He did not see the

20  warranty before he purchased the product, but did see the stamp on the product that indicated that

21  the warranty was for 25 years.  Mr. Forcella installed the deck himself.  By January 2007,

22  Mr. Forcella's Trex deck had developed extensive mold, mildew and/or fungal growth, and

23  widespread discoloration in the form of noticeably large black and gray spots.  Mr. Forcella has

24  expended considerable time and expense attempting to clean the deck using the methods

25  recommended by Trex, without success.  Despite his repeated efforts, the mold spotting and/or

26  fungal growth and attendant discoloration have reappeared.

27                  9.        Plaintiffs Sabrina W. Hass and Dr. Lanny W. Hass reside in Raleigh, North

28  Carolina.  In approximately December, 2007, Dr. and Mrs. Hass purchased a deck made of Trex

1   decking materials to be included as part of the construction of a new home after their builder told

2   them that the product was low maintenance.  They did not see the warranty prior to their

3   purchase.  The deck was professionally installed by Toll Bros. for approximately $2,770 on or

4   about August 2007.  Approximately one year later, Dr. and Mrs. Hass began to notice black mold

5   and fungal spotting on the deck.  At the request of Plaintiffs' counsel, a representative from Trex

6   cleaned the deck in November 2008.  After Trex's representative cleaned the deck, the mold spots

7   returned.  Photos of the deck after Trex's cleaning showing that the spots returned are attached as

8   Exhibit 2.  Mrs. Hass again attempted to clean the deck using the exact same method used by

9   Trex's representative on September 26, 2009.  Despite her efforts, by December 15, 2009,

10  extensive mold spotting, fungal growth, and attendant discoloration had reappeared.  Photographs

11  of the deck on December 15, 2009, are attached as Exhibit 3.

12          10.     Plaintiff Amy Biondi-Huffman resides in Powell, Delaware County, Ohio.

13  She purchased Trex decking from Home Depot in or around May, 2008 for approximately $3,500,

14  and does not recall seeing the warranty prior to purchasing the product.  She chose Trex after

15  seeing advertisements on Trex's website, including the representation that the product was low

16  maintenance.  Ms. Biondi-Huffman is a building contractor and hired a professional carpenter to

17  install the deck on her home.  The contractor installed the deck in accordance with the instructions

18  provided by Trex.  Ms. Biondi-Huffman began to notice black mold and fungal spotting in early

19  Summer of 2009.  Despite her efforts to clean the deck using the methods recommended by Trex,

20  extensive mold spotting, fungal growth, and attendant discoloration have reappeared.

21          11.     Plaintiff Brian Hathaway resides in Snohomish, Snohomish County,

22  Washington.  In May, 2006, he replaced a wooden deck on his home with Trex Origins decking

23  which he purchased for approximately $1,400.  He chose Trex based on advertisements he saw in

24  magazines and elsewhere that described the products as low maintenance.  He did not see the

25  written warranty prior to his purchase, nor, to the best of his recollection, was he provided the

26  warranty.  Mr. Hathaway, who owns and operates a home construction company, installed the

27  deck himself with the help of a construction worker.  By the Fall of 2006, Mr. Hathaway's Trex

28  deck had developed extensive mold, mildew and/or fungal growth, and widespread discoloration

1    in the form of noticeably large black and gray spots.  Plaintiff Hathaway has since expended

2    considerable time and expense attempting to clean the deck using the methods recommended by

3    Trex.  Despite his repeated efforts, the fungal growth, mold spotting, and attendant discoloration

4    have reappeared.

5            12.     Trex is incorporated in Delaware and has its principal place of business in

6    Winchester, Virginia.  It is the country's largest manufacturer of wood-plastic decking, railing,

7    fencing and trim products.  Its products are marketed and sold under the brand name "Trex."  The

8    company does business throughout California, Florida, Illinois, New Jersey, North Carolina,

9    Ohio, and Washington.  It manufactured, warranted, advertised, and sold the defective decking

10   products that were installed on Plaintiffs' homes and the homes and businesses of thousands of

11   others throughout California, Florida, Illinois, New Jersey, North Carolina, Ohio, and

12   Washington.

13                           **JURISDICTION AND VENUE**

14           13.     This Court has original jurisdiction over this action under the Class Action

15   Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which:  (1) there are 100 or

16   more members in the proposed class; (2) members of the proposed class have a different

17   citizenship from Trex; and (3) the claims of the proposed class members exceed $5,000,000 in the

18   aggregate.

19           14.     Venue is proper in this Court because Trex, through its business of selling,

20   advertising, and/or warranting its products, has established sufficient contacts in this District such

21   that it is subject to personal jurisdiction here.  Additionally, Trex has also already appeared before

22   this Court in this case.  Pursuant to 20 U.S.C. § 1391(c), therefore, Trex is deemed to reside in

23   this District.

24           15.     Venue is also proper in this District because Trex moved for the stay of

25   similar litigation in the Western District of Washington while this case was pending, and

26   ultimately requested that the Washington case be transferred to this Court.  As such, any

27   challenge Trex may mount to venue would be barred by the doctrine of judicial estoppel.  *See*

28   *Okano v. Trex Co., Inc.*, No. 5:09-cv-01878-JF (N.D. Cal.), Doc. Nos. 13 (Trex's motion to stay

1  Washington action) and 29 (minute entry describing Trex counsel's recommendation that the

2  Washington action be transferred to this Court).

3           16.      In addition, a substantial part of the events or omissions giving rise to these

4  claims and a substantial part of the property that is the subject of this action are situated in this

5  District.  As such, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

6                                 **APPLICABLE LAW**

7           17.      Plaintiffs bring this action under the laws of their respective home states.

8           18.      No enforceable choice-of-law agreement governs here or compels the

9  application of different states' laws.

10          19.      The proposed Classes include individuals and entities who own Trex

11  decking products and who reside in states that, on information and belief, comprise a significant

12  percentage of Trex's sales nationwide.  A common nucleus of factual and legal issues dominate

13  this litigation.  Although each Class may possess slightly differing remedies based on state statute

14  or common law, the claims asserted by the Plaintiffs are predicated on the same core facts and

15  legal claims with substantially the same relevant elements.  To the extent distinct remedies may

16  exist, they are local variants of a generally homogenous collection of causes which include

17  actionable misrepresentation, unjust enrichment, and breach of express warranty.

18          20.      Application of the law of each state is neither arbitrary nor fundamentally

19  unfair, because these states have significant contacts and a significant aggregation of contacts

20  with the claims of their residents that create a state interest in this litigation.

21                               **FACTUAL ALLEGATIONS**

22          21.      Trex is a wood-plastic composite decking material that Trex manufactures

23  using a blend of plastics and recycled post-industrial wood fibers.  Trex is advertised as a

24  premium material suitable for constructing outdoor decks, railings, and other related structures,

25  including structures in high moisture areas, such as around pools and hot tubs.  Trex is typically

26  more expensive than decking products made from alternate materials, such as treated wood,

27  redwood, and cedar.

28

22.     Upon information and belief, Trex has been manufacturing, advertising, selling and warranting Trex for consumer and commercial use since 1996.

23.     Decks and railings are generally vulnerable to mold, mildew, and other fungus growth, all of which require a constant presence of moisture to grow.  One common preventive measure is to apply "treatments," "stains," or "sealants" that are designed to prevent the growth of these organisms on the deck and railing materials, in part by sealing out water.

24.     Over and over again in its advertisements, Trex has advertised its decking as being "low maintenance" and stated that there is no "need for staining and sealing, so there's more time to actually enjoy your deck." *See* Collective Exhibit 4.  Trex broadly disseminated these uniform representations through communications with consumers, and through communications with wholesalers, retailers, and others in the chain of distribution that were ultimately passed on to Plaintiffs and the Class members.

25.     Because the product is said to be "low maintenance," Trex further claims that owners will save money they would otherwise spend on maintenance by using Trex instead of wood decking.  For instance, it represents "**Trex costs less over time-** After a slightly higher initial investment, Trex proves to be a superior value over years of worry-free ownership." Exhibit 5 (emphasis in the original). It also states that "Because it requires so little maintenance, Trex makes for a better value over the life of your deck purchase." *Id.*

26.     Trex's advertising materials also boast of the long-lasting beauty of its product.  For instance, Trex has advertised that its "decking and railing products are made from a unique combination of reclaimed wood and plastic, giving you the best qualities of both materials.… It looks great year after year," that Trex "provide[s] unmatched good looks and longevity," and that "Trex products are engineered and manufactured to deliver superior durability, ease of maintenance, and great looks for many years- something wood can't do." *See* Collective Exhibit 6.

27.     Trex also touts its products' "[r]esistance to moisture," and water resistance, making it "ideal for use around pools, hot tubs and spas."  *See* Collective Exhibit 7.

28.     Trex warrants its products for twenty-five (25) years from the date of original purchase.  The warranty provides that "Trex products shall be free from material defects in workmanship and materials, and shall not check, split, splinter, rot or suffer structural damage from termites or fungal decay."  *See* Exhibit 8.

29.     In fact, as confirmed by expert testing, Trex decking materials experience mold, mildew, and/or other fungal growth when properly installed and maintained.  Plaintiffs and their counsel have retained a wood scientist and a mycologist who examined product samples from multiple decks and confirmed the nature of the Defect.  They have also confirmed the ineffectiveness of cleaning methods suggested by Trex for mold and/or fungal spotting.

30.     According to Plaintiffs' wood science expert who has inspected the product, the mold, mildew, and/or fungal growth results from the fact that the wood fibers within the decking product are not properly encapsulated, and thus hold moisture.  As a result, cleaning is a temporary fix that will never actually correct the Defect, and will not stop the unsightly spotting.

31.     Based upon expert testing, and as demonstrated by Trex's own cleaning of multiple Trex decks belonging to Plaintiffs, cleaning methods recommended by Trex are ineffective.  They are also extremely expensive and beyond what can be expected of a reasonable homeowner.

32.     The growth occurs regardless of proper installation, maintenance and cleaning, and recurs quickly after being cleaned using the very process(es) Trex recommends.

33.     Whereas a reasonable consumer of decking products would expect to conduct some routine maintenance and clean their deck every few years as regular maintenance, Trex decking requires cleanings much more frequently, and even then cleanings are ineffective to remove or prevent the quick return of mold spotting and/or fungal growth.

34.     Plaintiffs and their counsel have been in contact with over seven hundred (700) owners of Trex decks and other Trex structures nationwide who have experienced the Defect.  These purchasers all have remarkably similar, if not identical experiences.  For instance, many homeowners report that they purchased Trex product for a premium expecting that there

1    would be minimal maintenance; yet, shortly after their decks were installed, the Defect

2    manifested.  Many also report that they have attempted to clean their decks using the protocol

3    recommended by Trex and that if the cleaning is effective at all, it only temporarily removes the

4    spots.  They also describe the recommended cleaning method as expensive and time consuming.

5         35.    For instance, a California homeowner reported, "We paid a premium price

6    so our deck would stay beautiful without additional time-consuming maintenance.  The Trex

7    website states that you can buy a mold-removing agent and scrub it off.  We tried that, since our

8    deck is only one month old and looks terrible, but it does not work, even with significant

9    scrubbing."

10        36.    One homeowner from Florida reported, "A few months after installing

11   tre[x] products it became covered with mildew. What was advertised as trouble free material costs

12   as much or more than a wood deck to maintain, the cleaning materials are more expensive than

13   those to clean and maintain a wood deck, and after the first cleaning I have at least 3-5 different

14   shades of the original color on the deck. Trex rep said I should paint it which defeats the whole

15   purpose of using Trex in the first place."

16        37.    Another homeowner from Florida reported, "Right after they installed it, it

17   started getting black round spots on it. The spots are not on top of the board, but are coming from

18   the inside.  It does not come off."

19        38.    A homeowner from Illinois reported, "My Trex deck looked great for about

20   1 month, then it started getting black spots all over it.  I paid a lot of money for this because it was

21   supposed to be virtually maintenance free.  This deck requires much more maintenance than my

22   old wood deck, costs 3 times the price, and looks worse most of the time."

23        39.    A homeowner from New Jersey reported, "Within a month, the spots have

24   appeared over the entire surface of the deck and are not fully removed with the 'deck cleaners'

25   that Trex recommends."

26        40.    A homeowner from North Carolina reported that her Trex deck started to

27   manifest the Defect even before installation was complete.  She stated, "The job started about 1

28   month ago but because of weather, it is still not complete.  What decking is complete has already

spotted black...all over the deck.  I haven't tried to clean it yet but thought I shouldn't be bothered already when my deck isn't even 2 months old!!  We have had it professionally installed and it is the Trex Accents."

41.     Another homeowner from North Carolina reported that "We used a qualified licensed contractor to install the deck.  We were very pleased with the Trex deck and looked forward to never again having to sand, stain and seal. . . . The spots have increased to cover most of the deck area. . . .On a visit to a local restaurant, I noticed the decking material used outside was the exact same as we had purchased, Trex Accent – color – Merlot. The decking material was covered with the same black spots.  Obviously, this is not an environmental issue as Trex continues to claim. This is clearly a product defect. The numerous complaints registered and information circulated on the web from various customers attest to this fact."

42.     An Ohio homeowner echoed these experiences: "By the beginning of the Spring of 2008 there was spots everywhere. I've cleaned them once with the recommended cleaner from their website but they came back even worse within 30 days. I'm extreme[ly] dis[s]apointed in the product and I'm doing just the opposite of why I purchased it in the first place. I don't want to clean it every month! The total purchase was for around $2000.00 and I kept the receipts. This company totally misrepresented it's product and after reading about it further it is in my opinion that it is defective."

43.     Similarly, a Washington homeowner reported: "[B]lack spots and mold that won't come completely out….Use what is recommended by Trex website, which doesn't take care of the problem."

44.     Trex decking owners have posted strikingly similar experiences on website "message boards."  For instance, in the "DIY Chatroom," customers posted on July 21, 2007, that "Within a few months [of installation], we had spots occurring all over it. . . We had it gently pressure washed, and still, the spots continued to increase.  By this May, the entire 3000 square foot deck had spots."  The homeowner also reported that a Trex representative inspected the deck and, "They brought out an Olympic Deck Stain removal product, and instructed us to apply it full strength, twice if necessary, to attempt to remove spots, which covered almost all of the entire

deck. The men agreed that the spots appeared to be mold that was coming from the interior of the product itself. We applied the cleaning product full strength, and were able to remove some of the spots, which were about the size of a nickel. Some still remained. The TREX rep assured us that they would send out a professional to clean it again, but one never materialized." The message continued, "we received a standard form letter from TREX indicating the problem absolutely was 'mold' and 'our fault' and 'not their problem.'" The homeowner concludes that "It is disappointing that for such an expensive, lifetime guaranteed product, the company in fact does not stand up for it, it hides behind it." This posting is attached as Exhibit 9.

45. An entry on <complaints.com> from August 2009 stated, "Our deck is 2 years old this month. We used the recommended cleaner and now there seem to be more mol[d] spots. This is more work tha[n] our wood deck was and 3 times the cost." *See* Exhibit 10 at 3.

46. Scores of similar messages regarding mold spotting on Trex decks have been posted on the home improvement website, <bobvilla.com>. For example, one posting from November 23, 2009 states, "We also have been very disappointed with our Trex deck, installed in early 2007. Approximately one third of the deck is now covered with mold and mildew spots. After cleaning with products recommended by Trex, these spots are not entirely removed. Even when the spots do appear to wash out, they return in a couple of weeks. The discoloration and fading in the portion of the deck where the cleaners were used is quite ugly, and the spots remain. We submitted a claim, along with photos, which was just rejected by the Trex company. I am very disappointed with this product and would not recommend that anyone purchase it." *See* Exhibit 11, attached. Another from June 18, 2007, states, "I have been fighting with Trex also regarding this mold issue. Trex sent me the packet....I complied regarding giving them all the information they requested, several photos, etc. In so many words, they will do NOTHING! Can anyone help me...do we have any recourse on this issue?" *See* Exhibit 12.

47. As these reports and the experiences of the Plaintiffs demonstrate, Trex fails in its purpose of providing suitable material with which to build and maintain a deck or other outdoor structure, and it fails to meet its advertised and warranted qualities of being low

1   maintenance, superior to wood, and fit for use without application of sealants, as evidenced by the

2   persistent and unsolvable mold spotting and fungal growth.

3        48.      Trex has refused to provide adequate relief to Plaintiffs and thousands of

4   others like them whose decks are prematurely failing.

5                        **WARRANTY ALLEGATIONS**

6        49.      Trex warrants its products for twenty-five (25) years from the date of

7   original purchase.

8        50.      Trex's warranty is frequently not provided to customers before the sale, if

9   at all.

10       51.      To the extent the warranty is provided to consumers prior to purchase, the

11  consumers have no opportunity to negotiate its terms; rather, if consumers want to purchase the

12  Trex products, they must accept Trex's unilaterally imposed warranty terms.

13       52.      The limited warranty purports to exclude recovery for "environmental

14  condition[s]" such as mold or mildew.  This exclusion is unconscionable and void because:

15              a.      it is unilaterally imposed in a contract of adhesion, as the parties

16  had unequal bargaining power, and Class members had no opportunity to negotiate its terms;

17              b.      it excludes a latent defect only known to Trex;

18              c.      it does not fall within the reasonable expectations of a purchaser,

19  and unfairly surprises innocent consumers; and/or

20              d.      this unilaterally imposed exclusion results in the allocation of

21  commercial risks in a socially or economically unreasonable manner, because Trex, a

22  sophisticated commercial entity that sold the defective products and that had actual and/or

23  constructive knowledge of the latent Defect, is able to transfer all foreseeable risks and costs of

24  the Defect to lay consumer purchasers with no knowledge of the Defect.

25       53.      The limited warranty also purports to limit the remedies available to

26  warranty claimants.  Specifically, the warranty disavows any "special, incidental or consequential

27  damages."  This limitation is unconscionable and void because:

28

- 13 -

1        a.     it is unilaterally imposed in a contract of adhesion, as the parties

2  had unequal bargaining power, and Class members had no opportunity to negotiate its terms;

3        b.     it excludes damages necessary to remedy the harm caused by a

4  latent defect only known to Trex;

5        c.     it does not fall within the reasonable expectations of a purchaser,

6  and unfairly surprises innocent consumers; and/or

7        d.     this unilaterally imposed limitation results in the allocation of

8  commercial risks in a socially or economically unreasonable manner, because Trex, a

9  sophisticated commercial entity that sold the defective products and that had actual and/or

10  constructive knowledge of the latent Defect, is able to transfer foreseeable consequential damages

11  caused by the Defect to lay consumer purchasers with no knowledge of the Defect.

12                                    **TOLLING**

13        54.     Because the Defect is latent and not detectable until manifestation,

14  Plaintiffs and the Class members were not reasonably able to discover them until after

15  installation, despite their exercise of due diligence, and even then Trex failed to disclose its

16  product was inherently defective.

17        55.     Trex knew of the Defect prior to the time of sale, and concealed that

18  material information from Plaintiffs and all consumers.  Any applicable statutes of limitation

19  have, therefore, been tolled by Trex's concealment of material facts.

20        56.     Trex is estopped from relying on any statutes of limitation because of its

21  concealment of the Defect.

22        57.     Additionally, on June 16, 2008 Trex entered a tolling agreement staying all

23  statutes of limitations regarding the alleged mold spotting defect which continues to the date of

24  the filing of this Second Amended Complaint.

25                     **CLASS ACTION ALLEGATIONS**

26        58.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all

27  other similarly situated consumers as members of one of the proposed plaintiff Classes defined

28  below pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).  This action satisfies the

numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

59.     The Classes are defined as follows (collectively, the "Class" or "Classes"):

**California Class**:  All persons and entities in California who own decking or other structures constructed of Trex decking products, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote.

**Florida Class**: All persons and entities in Florida who own decking or other structures constructed of Trex decking products, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote.

**Illinois Class**: All persons and entities in Illinois who own decking or other structures constructed of Trex decking products, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote.

**New Jersey Class**: All persons and entities in New Jersey who own decking or other structures constructed of Trex decking products, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote.

**North Carolina Class:** All persons and entities in North Carolina who own decking or other structures constructed of Trex decking products, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote.

**Ohio Class**: All persons and entities in Ohio who own decking or other structures constructed of Trex decking products, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote.

**Washington Class**: All persons and entities in Washington who own decking or other structures constructed of Trex decking products, including the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote.

60.     The following Persons shall be excluded from the Classes:  (1) Trex and its subsidiaries and affiliates; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) Judge Jeremy Fogel, his staff and immediate family members.

61.     In addition, all claims for personal injury and wrongful death are specifically excluded from the Class claims.

62.     Plaintiffs reserve the right to redefine the Classes prior to certification.

63.     Numerosity:  Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, Plaintiffs are informed and reasonably believe the number of affected structures is in the tens of thousands, such that joinder is impracticable.  The disposition of the claims of these Class members in a single class action will provide substantial benefits to all parties and to the Court.

64.     Typicality:  The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, own structures constructed from Trex decking products.  The representative Plaintiffs, like all Class members, have been damaged by Trex's misconduct in that they incurred or will incur the cost of repeatedly cleaning or prematurely replacing their inherently defective Trex decks.  Furthermore, the factual basis of Trex's misconduct is common to all Class members and represents a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all members of the Class.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

65.     Adequacy:  Plaintiffs will fairly and adequately protect the interests of the Class members.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, and specifically actions involving defective products.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class members, and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

66.     Commonality and Predominance of Common Issues:  There are numerous questions of law and fact common to Plaintiffs and the Classes.  Those questions predominate over any questions that may affect individual Class members, and include the following:

a.     Whether Trex decking products suffer from the alleged Defect, and are therefore not suitable for their intended use as a low maintenance outdoor decking product;

1     b. Whether Trex decking products are defectively designed or

2 manufactured;

3     c. Whether Trex knew or should have known of the inherent design

4 and/or manufacturing defect in its decking products;

5     d. Whether Trex knew or should have known of the defective nature

6 of its decking products;

7     e. Whether Trex concealed from and/or failed to disclose to Plaintiffs

8 and the Class members the inherent problems in its decking products;

9     f. Whether Trex had a duty to Plaintiffs and the Class members to

10 disclose the defective nature of its decking products;

11     g. Whether the facts Trex concealed and/or failed to disclose were

12 material;

13     h. Whether, as a result of Trex's concealment and/or failure to disclose

14 material facts, Plaintiffs and the Class members acted to their detriment by purchasing Trex

15 decking products or homes or other structures on which Trex decking products were installed;

16     i. Whether Trex engaged in unfair competition or unfair deceptive

17 acts or practices when it concealed the Defect inherent in Trex decking products and failed to

18 warn Plaintiffs and the Class members of the Defect;

19     j. Whether Trex's representations regarding its decking products had

20 a capacity to deceive a substantial portion of the consuming public;

21     k. Whether Trex violated the consumer protection statutes applicable

22 to each Class;

23     l. Whether Trex breached its warranty;

24     m. Whether limitations and exclusions in Trex's warranty are

25 unconscionable and void;

26     n. Whether Trex has been unjustly enriched;

27     o. Whether, as a result of Trex's conduct, Plaintiffs and the Classes

28 have suffered damages and, if so, the appropriate amount thereof; and

p.      Whether, as a result of Trex's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

67.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class members likely would find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Trex's misconduct.  Absent a class action, Class members will continue to incur damages and Trex's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

68.     Manageability:  Plaintiffs do not anticipate any difficulty in the management of this litigation.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of Cal. Civil Code § 1710**
**Deceit and Common Law Fraud**
**(On Behalf of the California Class)**

69.     Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

70.     This claim is brought by Plaintiff Mahan on behalf himself and the California Class.

71.     Pursuant to California Civil Code § 1710, deceit is either (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) a promise, made without any intention of performing it.

1      72.     Trex's actions constitute deceit under prongs (1), (2), and (3), identified in

2  Paragraph 70, above.

3                    **Deceit Based on Intentional Misrepresentation**

4      73.     The preceding paragraphs of this Complaint are realleged and incorporated

5  by reference and asserted by Plaintiff Mahan on behalf of himself and all members of the

6  California Class.

7      74.     Trex knowingly and/or recklessly made uniform misrepresentations to

8  consumers, including Plaintiff Mahan and members of the California Class, that Trex decking

9  products were low maintenance when, in fact, they are not.

10      75.     Trex knew or was reckless in not knowing that its representations were

11  untrue.  Trex either had actual knowledge of the fact that its decking products were not low

12  maintenance, but required an unreasonable amount of cleaning resulting from the Defect, or it

13  was reckless in not knowing.

14      76.     Trex intended for consumers to rely on its representations regarding the

15  amount of effort and expense required to maintain the product.  Trex knew that its representations

16  regarding the lack of maintenance required, and the lack of resulting expense of maintenance,

17  were material representations that would induce consumers to buy its products, even at a premium

18  over wood.

19      77.     Plaintiff Mahan and members of the California Class were unaware of the

20  fact that Trex decking products were not low maintenance, and instead would require more

21  cleaning than a consumer would expect even of a wood deck, and that even then, the product

22  would continue to exhibit unsightly mold and fungal stains.

23      78.     Plaintiff Mahan and the California Class reasonably relied on Trex's

24  misrepresentations regarding the amount of maintenance required.

25      79.     Plaintiff Mahan and the California Class have been proximately damaged

26  as a result of their reliance on Trex's misrepresentations in that they purchased Trex decking

27  products that are defective and require frequent, expensive and, ultimately, ineffective

28  maintenance.

80.     The fact that Trex was advertised as a "low maintenance" product was a primary selling point of Trex decking.  Had Plaintiff Mahan and the members of the California Class known that the Trex decking products were, in fact, high maintenance, and more maintenance-intensive than a less expensive wood deck, they would have either paid less for Trex or purchased a different product.

**Deceit Based on Negligent Misrepresentation**

81.     The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff Mahan on behalf of himself and the California Class.

82.     Trex negligently made uniform representations to consumers, including Plaintiff Mahan and members of the California Class, that Trex decking products were low maintenance, when in fact, they are not, but require frequent, expensive cleanings that are ultimately ineffective.

83.     Trex knew or reasonably should have known that its representations were untrue.  Trex either had actual knowledge of the fact that its decking products were not low maintenance, but required frequent, expensive cleanings, or it was negligent in not knowing.

84.     Trex intended for consumers to rely on its representations regarding the quality of its decking products.  Trex knew that its representations that the product was "low maintenance," would induce consumers to buy its decking products.

85.     Plaintiff Mahan and members of the California Class were unaware of the fact that the decking products were not "low maintenance" as promised.

86.     Plaintiff Mahan and members of the California Class reasonably relied on Trex's misrepresentations regarding the maintenance required of its decking products.

87.     The fact that Trex was advertised as a low maintenance product was a primary selling point of Trex decking.  Had Plaintiff Mahan and the members of the California Class known that the Trex decking products were, in fact, high maintenance, and more maintenance than a less expensive wood deck, they would have paid less for them or purchased a different product.

88.    Plaintiff Mahan and members of the California Class have been proximately damaged as a result of their reliance on Trex's misrepresentations in that they purchased Trex decking products that are not low maintenance, but instead require frequent, expensive cleanings.

**Deceit Based on Fraudulent Concealment/Nondisclosure**

89.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff Mahan on behalf of himself and the California Class.

90.    Trex fraudulently concealed from and/or intentionally failed to disclose to Plaintiff Mahan, members of the California Class, and all others in the chain of distribution (*e.g.*, concealments and omissions in Trex's communications with wholesalers, retailers, and others in the chain of distribution that were ultimately passed on to Plaintiff Mahan and the California Class) the true nature of Trex decking products, which is that they are not low maintenance, but require frequent, expensive cleanings due to the mold spotting defect.

91.    Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

92.    Trex had a duty to disclose material facts regarding the true nature of its decking products pursuant to the second, third, and fourth prongs:

a.    Trex had and has a duty to disclose material facts about its decking products because Trex had exclusive knowledge of the true properties of the decking products at the time of sale.  The mold spotting defect is latent and not something that Plaintiff Mahan or California Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

b.    Trex had and has a duty to disclose material facts about its decking products because Trex undertook active steps to conceal them.  Plaintiff Mahan is aware of nothing in Trex's advertising, publicity, or marketing materials that discloses the truth about the

mold spotting defect and the resulting frequent and expensive maintenance required of the product, despite ample evidence that Trex was aware of the problem by virtue of, if nothing else, numerous consumer complaints.

c.   Trex had and has a duty to disclose material facts about its decking products because Trex made and makes partial representations about the decking products but also suppresses some material facts.  These partial representations give rise to a duty to disclose the full story—that the Trex decking products require frequent, expensive cleanings, despite Trex's promises to the contrary that the decking products are "low maintenance."

93.   The facts concealed and/or not disclosed by Trex to Plaintiff Mahan and the California Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) Trex decking products.

94.   Trex intentionally concealed and/or failed to disclose the mold spotting defect and the fact that its decking products are not "low maintenance," but require frequent, expensive cleanings, for the purpose of inducing Plaintiff Mahan and the California Class to act thereon.

95.   Plaintiff Mahan and the California Class justifiably acted or relied to their detriment upon the concealed and/or non-disclosed facts as evidenced by their purchase of Trex decking products.

96.   Had Plaintiff Mahan and the California Class known of the Defect and that Trex decking products were not "low maintenance," they would not have purchased (or would have paid less for) the decking products.

97.   As a direct and proximate cause of Trex's misconduct, Plaintiff Mahan and California Class members have suffered actual damages in that they bought and own Trex decking products that do not perform as promised, and they will be required to incur costs to replace the decking products with alternative decking products or will be required to expend considerably more resources than they expected to maintain the deck and hide the mold spotting defect, if that is possible.

98.     Trex's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

99.     Trex has acted with "malice" as that term is defined in Civ. Code § 3294(c)(1) by engaging in conduct that was and is intended by Trex to cause injury to Plaintiff Mahan and the California Class.

100.     Trex has committed "fraud" as that term is defined in Civ. Code § 3294(c)(3) through its concealment of material facts known to Trex with the intent to cause injury to the Plaintiff Mahan and the California Class.

101.     Plaintiff Mahan, on behalf of himself and all members of the California Class, demands judgment against Trex for actual and punitive damages in accordance with Civ. Code § 3294(a) for himself and each member of the California Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

**SECOND CLAIM FOR RELIEF**

**Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA")**
**(On Behalf of California Class Only)**

102.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

103.     This claim is brought by Plaintiff Dean Mahan on behalf of the California Class.

104.     Defendant Trex is a "person" as defined by Civil Code § 1761(c).

105.     Plaintiff Mahan and the California Class members are "consumers" within the meaning of Civil Code § 1761(d).

106.     Venue is proper pursuant to Civil Code § 1780(c) because Trex does business in this District.  A Declaration establishing this Court as the proper venue for this action was previously filed.  (Doc. No. 1-2 at 21-22.)

107.     Trex violated the CLRA by uniformly affirmatively misrepresenting to Plaintiff Mahan and the California Class that Trex decking material is "low maintenance" when it is not.  Specifically, Trex's uniform misrepresentation of these material facts violated:

1      a.  § 1770(a)(5)'s proscription against representing that goods have

2 uses or characteristics they do not actually have;

3      b.  § 1770(a)(7)'s proscription against representing that goods are of a

4 particular standard or quality when they are of another;

5      c.  § 1770(a)(9)'s proscription against advertising goods with the intent

6 not to sell them as advertised; and

7    108.  Trex violated the CLRA's "proscription against a concealment of the

8 characteristics, use, benefit, or quality" of Trex decking material by actively concealing in all of

9 its broadly disseminated advertising, warranties, and representations the material fact that the

10 decks suffer from the mold spotting defect and are therefore substantially certain to fail

11 prematurely. *Outboard Marine Corp. v. Superior Ct.*, 52 Cal. App. 3d 30, 37, 124 Cal. Rptr. 852

12 (1979). Specifically, Trex's active concealment of material facts violated:

13      a.  § 1770(a)(5)'s proscription against representing that goods have

14 uses or characteristics they do not actually have;

15      b.  § 1770(a)(7)'s proscription against representing that goods are of a

16 particular standard or quality when they are of another;

17      c.  § 1770(a)(9)'s proscription against advertising goods with the intent

18 not to sell them as advertised; and

19    109.  The facts misrepresented and concealed by Trex were material, in that a

20 reasonable person would have considered them important in deciding whether or not to purchase

21 (or to pay the same price for) the Trex decking and railing material.

22    110.  Trex's misrepresentations, concealment, and deceptive practices, in

23 violation of the CLRA, were designed to induce Plaintiff Mahan and the California Class

24 members to purchase the decking and railing material.

25    111.  Trex intended to do the act that was deceptive and/or fraudulent, namely, to

26 market, distribute and sell the defective decking and railing material.

27    112.  Plaintiff Mahan and the California Class suffered actual damages as a

28 direct result of Trex's misrepresentations, concealment and/or omissions in violation of the

1    CLRA, as evidenced by their decisions to purchase defective Trex decking products.  Had they

2    known of the true character and quality of the Trex decking products, Plaintiff Mahan and the

3    California Class members would not have purchased (or would have paid less for) the products.

4    113.    To this day, Trex continues to violate the CLRA by concealing the

5    defective nature of its decking products and continuing to sell these products, by selling (and

6    profiting unjustly from) replacement decking material, and by failing or refusing to reveal to

7    California Class members that the cause of the problems with the decking products is an inherent

8    defect and not a result of improper use or maintenance.

9    114.    Trex also violated § 1770(a)(19)'s proscription against inserting

10   unconscionable provisions in contracts for the sale of goods to consumers, by inserting clauses in

11   its warranty that purport to (a) exclude coverage for damage caused by the hidden and latent

12   Defect, and (b) limit consequential damages for all warranty claims.  These provisions are

13   unconscionable.  *See* Warranty Allegations, above.

14   115.    Plaintiff Mahan, on behalf of himself and all others similarly situated,

15   demands judgment against Trex under the CLRA for injunctive relief in the form of restitution

16   and/or proportional disgorgement of funds paid to Trex to purchase defective decking products

17   and/or replace the defective products, an injunction requiring Trex to replace the defective

18   decking products free of charge, and an award of attorneys' fees.

19   116.    In accordance with § 1782(a) of the CLRA, on January 15, 2010, Plaintiffs'

20   counsel served Trex with notice of its alleged violations of the CLRA by certified mail, return

21   receipt requested.  A true and correct copy of that notice is attached hereto as Exhibit 13.

22   117.    If Trex fails to provide appropriate relief for its violations of the CLRA

23   within 30 days of Plaintiff's January 15, 2010 notification, Plaintiff Mahan will amend this

24   complaint to seek damages pursuant to Cal. Civ. Code §§ 1780, 1782, including:

25         a.    actual damages, § 1780(a)(1);

26         b.    punitive damages, § 1780(a)(4);

27         c.    penalties of up to $5,000 for each senior citizen Class member, §

28   1780(b);

1          d.      attorneys' fees and costs, § 1780(e); and

2          e.      any other relief the Court deems proper, § 1780(a)(5).

### THIRD CLAIM FOR RELIEF

**Violation of Bus. & Prof. Code §§ 17200 & 17500 ("Unfair Business Practices Act")**
**(On Behalf of California Class Only)**

118.    Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

119.    This claim is brought by Plaintiff Mahan on behalf himself and all members of the California Class.

120.    Business & Professions Code § 17200 prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts of practices;" (b) "unfair or fraudulent business acts of practices;" and (c) "unfair, deceptive or misleading advertising."

121.    Trex violated the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.*, by engaging in conduct that violated each of the three prongs identified by the statute and outlined in Paragraph 120, above.

122.    Trex committed an unlawful business act or practice in violation of § 17200, *et seq.*, when it violated Cal. Civ. Code § 1710 as alleged in the First Claim for Relief, above.

123.    Trex committed an unlawful business act or practice in violation of § 17200, *et seq.*, when it violated the CLRA as alleged in the Second Claim for Relief, above.

124.    Trex committed an unlawful business act or practice in violation of § 17200, *et seq.*, when it violated the common law prohibition against deceit/fraud as alleged in the First Claim for Relief.

125.    Trex committed an unlawful business act or practice in violation of § 17200, *et seq.*, when it violated the common law prohibition against fraudulent misrepresentations and fraudulent concealment/nondisclosure as alleged in the Fourth and Fifth Claims for Relief.

126.    Trex committed unfair and fraudulent business acts and practices in violation of §§ 17200 and 17500, *et seq.*, by actively concealing and omitting from its advertising, marketing, and other communications (including, *inter alia*, concealments and omissions in Trex's communications with wholesalers, retailers, and others in the chain of distribution that were ultimately passed on to Plaintiff and the California Class) material information about the defective nature of Trex decking products in a manner that is deceptive and likely to deceive consumers and the public.  Trex was in a position of superior knowledge of the material Defect and failed to disclose it or concealed it from the consuming public, and in fact, made misrepresentations that the product was "low maintenance," when it is not.  Trex thereby had an affirmative duty to disclose the true nature of the product and the Defect.

127.    Trex disseminated unfair, deceptive, untrue and/or misleading advertising in violation of §§ 17200 and 17500, *et seq.*, when it concealed and/or failed to disclose the true defective nature of its decking products in its advertising, marketing, and other broadly disseminated representations containing statements that its decking products were of a certain quality or standard when they were not.

128.    Trex disseminated unfair, deceptive, untrue and/or misleading advertising in violation of §§ 17200 and 17500, *et seq.*, when it stated in its marketing, advertising and other broadly disseminated representations that Trex decking products were low maintenance when, in fact, they are not.  These misrepresentations are likely to deceive the public.

129.    Trex's deceptive practices were specifically designed to and did induce Plaintiff and members of the Class to purchase Trex decking products.

130.    Trex's deceptive practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

131.    To this day, Trex continues to violate the Unfair Business Practices Act by continuing to actively misrepresent and conceal the true characteristics of its decking products.

132.    As a direct and proximate cause of Trex's violation of the Unfair Business Practices Act,  Plaintiff Mahan and the California Class have suffered harm in that they own

1  defective decking products substantially certain to prematurely fail, and will be required to incur

2  costs to clean and/or replace the defective decks.

3  133.  As a proximate result of Trex's violation of the Business and Professions

4  Code § 17200, *et seq.*, Trex has been unjustly enriched and should be required to make restitution

5  to Plaintiff Mahan and the California Class or disgorge its ill-gotten profits pursuant to § 17203 of

6  the Business & Professions Code.

7  134.  Plaintiff Mahan, on behalf of himself and the California Class, demands

8  judgment against Trex for injunctive relief in the form of restitution, proportional disgorgement of

9  funds paid to Trex to purchase the defective decking products, disgorgement of funds received by

10  Trex from the purchase of replacement decking material, and/or injunctive relief in the form of

11  replacement of the defective decks.

12  **FOURTH CLAIM FOR RELIEF**

13  **Fraudulent Concealment/Nondisclosure**
**(On Behalf of All Classes)**

14

15  135.  Plaintiffs incorporate by reference the allegations contained in preceding

16  paragraphs of this Complaint.

17  136.  This claim is brought by Plaintiffs on behalf of themselves and their

18  respective Classes.

19  137.  Trex knew that its decking products are defective in that they are

20  substantially certain to exhibit the mold spotting defect.  Upon information and belief, Trex has

21  received at least hundreds of complaints regarding discoloration from fungal growth and mold

22  spotting from customers alerting Trex to the Defect.

23  138.  Despite its knowledge of the Defect, Trex fraudulently concealed from

24  and/or intentionally failed to disclose to Plaintiffs, the Classes, and all others in the chain of

25  distribution (*e.g.*, concealments and omissions in Trex's communications with wholesalers,

26  retailers, and others in the chain of distribution that were ultimately passed on to Plaintiffs and the

27  Classes) the true nature of its decking products.

28

1      139. Trex was and is under a duty to Plaintiffs and the Classes to disclose these

2   facts because:

3        a. Trex is in a superior position to know the true character and quality

4   of its defective decking products, and the mold spotting defect is latent;

5        b. Trex makes partial disclosures about the defective decking products

6   while not revealing their true character or quality; and

7        c. Trex actively concealed the nature of the defective decking products

8   from Plaintiffs and the Classes.

9      140. The facts concealed and/or not disclosed by Trex to Plaintiffs and the

10  Classes are material facts in that a reasonable person would have considered them important in

11  deciding whether or not to purchase (or to pay the same price for) the Trex decking products.

12     141. Trex intentionally concealed and/or failed to disclose the problems with its

13  decking products for the purpose of inducing Plaintiffs and Class members to act thereon.

14     142. Plaintiffs and Class members justifiably acted or relied upon to their

15  detriment the concealed and/or non-disclosed material facts as evidenced by their purchase of the

16  defective decking products.  The decking products require more maintenance than a reasonable

17  consumer would expect, and the mold spots and fungal growth are impossible to prevent or

18  remove and return shortly after cleanings. Had they known of the true character and quality of

19  Trex's decking products, Plaintiffs and Class members would not have purchased (or would have

20  paid less for) the decking products.

21     143. As a direct and proximate cause of Trex's misconduct, Plaintiffs and Class

22  members have suffered actual damages in that they have defective decking products that have

23  required or will require unreasonable and excessive maintenance, if not replacement.

24     144. Trex's conduct has been and is malicious, wanton and/or reckless and/or

25  shows a reckless indifference to the interests and rights of others.

26     145. Plaintiffs, on behalf of themselves and all others similarly situated, demand

27  judgment against Trex for actual damages, plus attorneys' fees for the establishment of a common

28  fund, interest, costs and punitive damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTH CLAIM FOR RELIEF

### Fraudulent Misrepresentation
**(On Behalf of All Classes)**

146.    Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

147.    Trex knowingly and/or recklessly made uniform misrepresentations to consumers, including Plaintiffs and members of the Class, that Trex decking products were low maintenance when, in fact, they are not.

148.    Trex knew or was reckless in not knowing that its representations were untrue.  Trex either had actual knowledge of the fact that its decking products were not low maintenance, and instead required an unreasonable amount of cleaning resulting from the mold spotting defect, or it was reckless in not knowing.

149.    Trex intended for consumers to rely on its representations regarding the amount of effort and expense required to maintain the product.  Trex knew that its representations regarding the lack of maintenance required, and the lack of resulting expense of maintenance, would induce consumers to buy its products, even at a premium over wood.

150.    Plaintiffs and Class members were unaware of the fact that Trex decking products were not low maintenance and would require more cleaning than a consumer would expect even of a wood deck, and that even then, the product would continue to exhibit unsightly mold and fungal stains.

151.    Plaintiffs and the Class reasonably relied on Trex's misrepresentations regarding the amount of maintenance required.

152.    The fact that Trex was advertised as a "low maintenance" product was a primary selling point of Trex decking.  Had Plaintiffs the Class known that the Trex decking products were, in fact, high maintenance, and more maintenance-intensive than a less expensive wood deck, they would have paid less for them or purchased a different product.

153.    Plaintiffs and the Class have been proximately damaged as a result of their reliance on Trex's misrepresentations in that they purchased Trex decking products that are

1  defective and require frequent, expensive maintenance, and even then, the maintenance is not

2  effective to correct the mold spotting defect.

3  **SIXTH CLAIM FOR RELIEF**

4  **Violation of Florida's Deceptive and Unfair**
5  **Trade Practices Act, F.S.A., 501.201, *et seq.* ("FDUTPA")**
**(Asserted on Behalf of the Florida Class)**

6      154.    Plaintiffs incorporate by reference the allegations contained in all preceding

7  paragraphs of this Complaint as though set forth fully herein.

8      155.    This claim is brought by Plaintiff Tisdale on behalf of himself and the

9  Florida Class.

10     156.    At all relevant times, Plaintiff Tisdale and all members of the Florida Class

11 were consumers within the meaning of FDUTPA.

12     157.    At all relevant times hereto, Trex engaged in trade and/or commerce within

13 the meaning of FDUTPA.

14     158.    The practices of Trex violate FDUTPA for, among other things, one or

15 more of the following reasons:

16         a.    Trex omitted and concealed material facts from its communications

17 and disclosures to Plaintiff Tisdale and all members of the Florida Class regarding the Defect

18 inherent in the Trex decking product;

19         b.    Trex made false and/or misleading statements of material fact

20 regarding the Trex product, which statements were likely to deceive the public; and

21         c.    Trex knew, or was reckless in not knowing, that its statements about

22 Trex decking product were false and/or misleading.

23     159.    By the conduct described herein, Trex has engaged in unfair methods of

24 competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

25 conduct of trade or commerce.

26     160.    The representations and omissions by Trex were likely to deceive

27 reasonable consumers and a reasonable consumer would have relied on these representations and

28 omissions.

161.    Had Trex disclosed all material information regarding its decking products to Plaintiff Tisdale and all of the Florida Class members, they would not have purchased Trex decking product.

162.    The foregoing acts and practices proximately caused Plaintiff Tisdale and other members of the Florida Class to suffer actual damages in the form of, among other things, monies spent to clean their Trex decking product and/or diminution in value of the Trex decking product.  Plaintiff and the Florida Class are entitled to recover such damages, attorneys' fees, and costs of suit.

## SEVENTH CLAIM FOR RELIEF

### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("CFDBPA")
(Asserted on Behalf of the Illinois Class)

163.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

164.    At all relevant times, Plaintiff Steve McKenna and all members of the Illinois Class were consumers within the meaning of CFDBPA.

165.    At all relevant times hereto, Trex engaged in trade and/or commerce within the meaning of CFDBPA.

166.    Despite knowing that its decking products are manufactured and sold with the mold spotting defect, when it marketed and sold its decking product, Trex uniformly represented to customers and the general public that the products are free from defects, "low maintenance," and will perform in the manner and for the purpose intended.

167.    Under all circumstances, Trex's misrepresentations and/or omissions regarding the Defect and the "low maintenance" nature of the product were misleading and deceptive, and Trex intentionally made these misleading and deceptive representations and/or omissions (while knowing they were deceptive and misleading) for the purpose of deceiving Plaintiff McKenna and other Illinois Class members.  Trex intended that Plaintiff McKenna would rely on its deceptive and misleading practices.

168.     Trex's conduct was unfair and deceptive and constituted an improper concealment, suppression, or omission of material facts—in violation of the CFDPA's prohibition against unfair business practices.

169.     Trex violated the CFDPA's prohibitions against unfair business practices and misrepresenting and omitting material information during commercial transactions, by representing the product was "low maintenance," when it is not, and by concealing the mold spotting defect.

170.     Trex's misconduct, including the misrepresentations and concealment of the defective condition of Trex decking product and its nature as a "low maintenance" product, took place in the course of trade or commerce in Illinois.

171.     As a direct and proximate result of Trex's violations of the CFDPA, Plaintiff McKenna and other Class members suffered damages, in the form of, among other things, money and effort to clean and maintain their Trex decking product and/or diminution in value of the Trex decking product.

## EIGHTH CLAIM FOR RELIEF

### Violation of Illinois Uniform Deceptive Trade Practice Act ("UDTPA"), 815 ILCS 510/1, *et seq.*
### (Asserted on Behalf of the Illinois Class)

172.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

173.     This claim is brought by Plaintiff Steve McKenna on behalf of himself and all members of the Illinois Class.

174.     At all relevant times, Trex was a person within the meaning of the Illinois UDTPA.

175.     Trex engaged in deceptive trade practices when it represented that its decking products had characteristics, benefits, or qualities that they did not.  Specifically, Trex misrepresented that its decking products were "low maintenance," and consciously failed to disclose material facts regarding the mold spotting defect and the extensive and expensive

1    maintenance that the product requires.  These misrepresentations and omissions were directed

2    toward Plaintiff McKenna and the Illinois Class.

3         176.    In fact, the decking products require more maintenance than a reasonable

4    consumer would expect, and the mold spots and fungal growth are impossible to prevent or

5    remove and return shortly after cleanings.

6         177.    Despite knowing that its decking products are manufactured and sold with

7    the mold spotting defect when it marketed and sold its decking product, Trex uniformly

8    represented to customers and the general public that the products are free from defects, are "low

9    maintenance," and will perform in the manner and for the purpose intended.

10        178.    Trex made these representations willfully.

11        179.    As a result of Trex's deceptive trade practices, Plaintiff McKenna and the

12   Illinois Class are entitled to all relief available under Illinois' UDTPA, including damages and

13   injunctive relief, as well as costs and attorneys fees.

14                              **NINTH CLAIM FOR RELIEF**

15   **Violation of New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*
     (Asserted on Behalf of the New Jersey Class)**

16        180.    Plaintiffs incorporate by reference the allegations contained in preceding

17   paragraphs of this Complaint.  This claim is brought by Plaintiff John Forcella on behalf of

18   himself and the New Jersey Class.

19        181.    Plaintiff John Forcella, all other members of the New Jersey Class, and

20   Trex are "persons" within the meaning of the CFA.

21        182.    Plaintiff and all other members of the New Jersey Class are "consumers"

22   within the meaning of the CFA.

23        183.    At all relevant times material hereto, Trex conducted trade and commerce

24   in New Jersey and elsewhere within the meaning of the CFA.

25        184.    The CFA is, by its terms, a cumulative remedy, such that remedies under

26   its provisions can be awarded in addition to those provided under separate statutory schemes.

27

28

185.     Trex has engaged in deceptive practices related to the sale of its product, including consciously failing to disclose material facts regarding the Defect to Plaintiff and members of the New Jersey Class, and misrepresenting to Plaintiff Forcella and the New Jersey Class that the product is "low maintenance."

186.     Trex's unconscionable conduct alleged herein included the omission and concealment of material facts, and misrepresentations, concerning its decking products.

187.     Trex intended that Plaintiff Forcella and members of the New Jersey Class would purchase its products.

188.     Trex intended that Plaintiff Forcella and members of the New Jersey Class rely on the acts of concealment, omissions, and misrepresentations regarding the "low maintenance" nature of the product, so that Plaintiff and members of the New Jersey Class would purchase the defective Trex decking product.

189.     Had Trex disclosed all the material information regarding its Trex Product to Plaintiff Forcella and members of the New Jersey Class, they would not have purchased Trex's decking products, or would have paid less for them.

190.     The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiff Forcella and other members of the New Jersey Class to suffer an ascertainable loss in the form of monies paid to Trex for defective decking products that are not "low maintenance," and they are entitled to recover such damages, and appropriate penalties (including treble damages) attorneys' fees, and costs of suit.

### TENTH CLAIM FOR RELIEF

**Violation of North Carolina Unfair and Deceptive Trade Practices Act § 75-1.1 ("NCGS")**
**(Asserted on Behalf of the North Carolina Class)**

191.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

192.     Sabrina W. Hass and Dr. Lanny W. Hass (the Hasses) bring this claim on behalf of themselves and the North Carolina Class.

1          193.    Pursuant to NCGS § 75-1.1(a), "unfair methods of competition in or

2  affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are

3  declared unlawful."

4          194.    At all relevant times, Trex's misrepresentations, acts, and omissions were

5  in and affected commerce within the meaning of NCGS.

6          195.    Trex misrepresented to the Hasses and the general public that its products

7  were "low maintenance," when they were not, and in fact require frequent and expensive

8  cleanings.

9          196.    Trex omitted and concealed material facts from its communications and

10  disclosures to the Hasses and all members of the North Carolina Class regarding the Defect and

11  the amount of maintenance the product requires, and Trex intended that the Hasses and the North

12  Carolina Class rely on its misrepresentations and omissions.

13         197.    Trex's misrepresentations, acts, and omissions had a tendency or capacity

14  to deceive the Hasses and the North Carolina Class.

15         198.    The Hasses and the North Carolina Class were injured by reason of Trex's

16  misrepresentations, acts, and omissions.

17         199.    Trex's conduct as described herein was unfair, deceptive, violating of

18  public policy, and substantially injurious to the Hasses and the North Carolina Class.

19         200.    The Hasses and the North Carolina Class have suffered actual damages in

20  the form of, *inter alia*, monies spent to clean the Trex Product and/or diminution in value of the

21  Trex Product, and are entitled to recover such damages, together with appropriate exemplary

22  damages, attorneys' fees, and costs of suit.

23                              **ELEVENTH CLAIM FOR RELIEF**

24                **Violation of the Ohio Consumer Sales Practices Act**
                     **("CSPA"), Ohio Rev. Code Ann., §§ 1345.01, *et seq.***

25                      **(Asserted on Behalf of the Ohio Class)**

26         201.    Plaintiffs incorporate by reference each preceding and succeeding

27  paragraph as though fully set forth herein.

28

202.     Plaintiff Amy Biondi-Huffman asserts this cause of action on behalf of herself and the Ohio Class.

203.     The CSPA is codified at Ohio Rev. Code Ann.§§ 1345.01, *et seq.*  The statute is broad, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]."  Ohio Rev. Code Ann. § 1345.01(A).  Accordingly, the conduct at issue in this case falls within the scope of the CSPA.

204.     The CSPA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions.  Ohio Rev. Code Ann. § 1345.02(A).  The CSPA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions.  Ohio Rev. Code Ann. § 1345.09.

205.     Trex has engaged in unfair, deceptive, and unconscionable practices by: (1) marketing and selling Trex decking products as having certain performance characteristics, uses, or benefits that they do not have and that they are of a particular standard, quality, and/or grade when they are not.  Specifically, Trex marketed its products as being "low maintenance" and better than wood when, in fact, Trex decking products require frequent, expensive maintenance beyond what a reasonable consumer would expect.  The mold spotting is impossible to prevent or remove and returns shortly after cleanings.  Trex intentionally failed to disclose and/or concealed this well-known Defect.

206.     Trex acted in the face of prior notice that its conduct was deceptive, unfair, or unconscionable.  These material omissions constitute a violation of the CSPA.  Trex also violated the CSPA by making representations, claims, or assertions of fact in the absence of a reasonable basis in fact.  Ohio Rev. Code Ann. § 109:4-3-10(A).

207.     As a direct and proximate result of Trex's violations of the CSPA, Plaintiff Biondi-Huffman and the Ohio Class have been injured.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TWELFTH CLAIM FOR RELIEF

### Tortious Breach of Warranty
**(Asserted on Behalf of the Ohio Class)**

208.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

209.    Plaintiff Biondi-Huffman asserts this cause of action on behalf of herself and the Ohio Class.

210.    Trex impliedly warranted that its Trex decking products were of good and merchantable quality—fit and safe for their ordinary intended use.

211.    There were design defects in the decking products manufactured, distributed, and/or sold by Trex to middlemen who then resold the products to Plaintiff Biondi-Huffman and the Ohio Class; those defects existed at the time the decking was sold to Plaintiff Biondi-Huffman and the other members of the Ohio Class; and those defects were the direct and proximate cause of injury to Plaintiff Biondi-Huffman and the Ohio Class.

212.    The Defect renders Trex's product unfit for its intended purpose and not of merchantable quality.

213.    As a direct and proximate result of Trex's warranty breach, Plaintiff Biondi-Huffman and the Ohio Class were caused to suffer loss attributable to the decreased value of the product itself and consequential damages, and Plaintiff Biondi-Huffman and the Ohio Class will have to spend monies to clean and/or replace their Trex structures.

## THIRTEENTH CLAIM FOR RELIEF

### Negligent Design and Failure to Warn
**(Asserted on Behalf of the Ohio Class)**

214.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

215.    Plaintiff Biondi-Huffman asserts this cause of action on behalf of herself and the Ohio Class.

216.    Trex knew—or by the exercise of reasonable care should have known— that its decking materials would have and had the alleged Defect and would thus require frequent

1   and expensive cleanings, and that the mold spots and fungal growth are impossible to prevent or

2   remove and return shortly after cleanings.

3          217.   Trex knew that Plaintiff Biondi-Huffman and the Ohio Class—who used

4   Trex's decking products for their intended use—were members of a foreseeable class of persons

5   who were and are at risk of suffering serious inconvenience and expense solely because of the

6   Defect.

7          218.   Trex's suggestions for cleaning the product are ineffective and do not

8   remove the Defect.  The decking products require more maintenance than a reasonable consumer

9   would expect, and the mold spots and fungal growth are impossible to prevent or remove and

10  return shortly after cleanings.

11         219.   At the time Trex manufactured, distributed, and/or sold the Trex product, it

12  owed a non-delegable duty to persons like Plaintiff Biondi-Huffman and the other members of the

13  Ohio Class to exercise ordinary and reasonable care to properly design the decking product, and it

14  owes a continuing duty to warn about the problem and to repair and/or recall its defective Trex

15  Product.

16         220.   Trex had a pre-sale duty to warn potential purchasers that its decking

17  materials carried with them greater risks of unsightly mold spotting and discoloration than an

18  ordinary consumer would expect when using the products in their intended or reasonably-

19  foreseeable manner.

20         221.   Trex failed to use appropriate design and engineering in manufacturing the

21  decking product, and in other respects, Trex breached its duties by being wantonly reckless,

22  careless, and negligent.

23         222.   As a direct and proximate result of Trex's wanton recklessness,

24  carelessness, and negligence, Plaintiff Biondi-Huffman and the Ohio Class were caused to suffer

25  damages and losses, and will have to spend money to clean and/or replace the defective decking

26  products.

27         223.   Neither Plaintiff Biondi-Huffman nor members of the Ohio Class have

28  committed any contributory negligence.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FOURTEENTH CLAIM FOR RELIEF

### Violation of Washington's Consumer Protection Act, RCW §§ 19.86, *et seq.*
#### (On Behalf of the Washington Class Only)

224.    Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

225.    This claim is brought by Plaintiff Hathaway on behalf of himself and the Washington Class.

226.    Trex engaged in unfair or deceptive acts or practices when it (1) represented that its products are moisture resistant, superior to wood products, and low maintenance when, in fact, they are not; (2) failed to disclose its knowledge of the Defect in its decking products, but instead continued to advertise it as a product that was expected to last twenty-five (25) years and was of a superior quality; (3) failed to disclose the Defect to Plaintiff Hathaway and the Washington Class members; and (4) limited its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the true defective nature of its Trex decking products.

227.    Trex either knew or should have known that its decking products were defectively designed and/or manufactured, would fail prematurely, were not suitable for their intended use, and were otherwise not as warranted and represented by Trex.  Specifically, the decking products exhibit unsightly mold and or fungal spots, require more maintenance than a reasonable consumer would expect, and the mold spots and fungal growth are impossible to prevent or remove and return shortly after cleanings.

228.    Trex's unfair or deceptive acts or practices repeatedly occurred in Trex's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

229.    As a direct and proximate cause of Trex's unfair or deceptive acts or practices, Plaintiff Hathaway and the Washington Class members have suffered actual damages in that they own structures constructed from a product that is defective and that has failed prematurely due to design and/or manufacturing deficiencies and the use of substandard materials.

1   These failures have caused and will continue to cause Plaintiff Hathaway and the Washington

2   Class members to incur expenses cleaning and/or replacing the structures.

3          230.    As a result of Trex's unfair and deceptive practices, Plaintiff Hathaway and

4   the Washington Class members are entitled to injunctive relief in the form of restitution and/or

5   disgorgement of funds paid to Trex to purchase their decking material, or to clean or replace their

6   structures constructed from Trex decking material, as well as compensatory and treble damages,

7   attorneys' fees, and costs pursuant to RCW §§ 19.86, *et seq.*

8                         **FIFTEENTH CLAIM FOR RELIEF**

9                         **Breach Of Express Warranty**
                          **(On Behalf of the All Classes)**
10

11          231.    Plaintiffs hereby incorporate by reference the allegations contained in the

    preceding paragraphs of this Complaint.
12

13          232.    This cause of action is brought on behalf of all Classes.

14          233.    Trex made affirmations of fact and promises to Plaintiffs and members of

    the Classes which related to the Trex decking products as more fully described herein.
15

16          234.    Trex's affirmations of fact and promises became part of the basis of the

    bargain between the parties.
17

18          235.    These affirmations of fact and promises created an express warranty that

19   Trex decking products would conform to Trex's affirmations and promises.

20          236.    Trex uniformly warranted all of its product against defects in material or

21   workmanship at a time when it knew that the product suffered from serious defects and,

    nevertheless, continued to market and sell the product with this express warranty.
22

23          237.    Trex is obligated under the terms of its written warranty to replace the

24   defective product sold to Plaintiffs and members of the Classes or to refund the purchase price of

    the Trex decking products.
25

26          238.    Trex has breached its written warranty, as set forth above, by supplying its

27   decking products in a condition which does not meet the warranty obligations undertaken by Trex

    and by failing to replace the defective product or refund the purchase price.
28

1    239.    As set forth above, Trex's warranty fails in its essential purpose and,

2    accordingly, Plaintiffs and members of the Classes cannot and should not be limited to the

3    remedies set forth in Trex's written warranty and, instead, should be permitted to recover all

4    measures of appropriate relief.

5    240.    Trex has received sufficient and timely notice of the breaches of warranty

6    alleged herein.  Despite this notice and Trex's knowledge of the Defect in its decking product,

7    Trex has failed and refused to honor its warranty.

8    241.    Plaintiffs and members of the Classes have given Trex a reasonable

9    opportunity to cure its failures with respect to its warranty, and Trex has failed to do so.

10    242.    Trex has failed to provide Plaintiffs and members of the Classes, as a

11    warranty replacement, a product that conforms to the qualities and characteristics that Trex

12    expressly warranted when it sold the its decking products to Plaintiffs and members of the

13    Classes, or to provide a refund of the purchase price of the products.

14    243.    As a result of Trex's breach of warranty, Plaintiffs and members of the

15    Classes have suffered damages in an amount to be determined at trial, including compensatory,

16    consequential, and punitive damages.

17    244.    Any contractual language contained in Trex's express warranty that

18    attempts to limit remedies is unconscionable and void because it fails to conform to the

19    requirements for limiting remedies under applicable law, and results in the allocation of

20    commercial risks in a socially or economically unreasonable manner, as described in

21    paragraph 53, above.

22    245.    Language in Trex's limited warranty that purports to exclude the exact type

23    of fungal growth that affects Plaintiffs' and proposed Class members' Trex products is

24    unconscionable and void, because it is a unilaterally imposed exclusion in a contract of adhesion

25    that is typically provided after the sale, and results in the allocation of commercial risks in a

26    socially or economically unreasonable manner, as described in paragraphs 52, above.

27

28

1

## SIXTEENTH CLAIM FOR RELIEF

2

### Breach of Implied Warranty of Merchantability
**(On Behalf of All Classes Other than Ohio, California, Florida and North Carolina)**

3

4

246.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

5

6

247.    Trex is a merchant as defined by applicable Uniform Commercial Code ("U.C.C.") provisions and sold Trex decking products to Plaintiffs and the Class for residential decking use.

7

8

248.    Trex impliedly warranted to Plaintiffs and the Class that Trex was free of defects, merchantable and fit for residential decking use.

9

10

249.    Plaintiffs and the Class were in privity with Trex in that they purchased their Trex Product from an actual or apparent agent of Trex such as Trex's authorized dealers.

11

12

250.    Plaintiffs and the Class are also in privity with Trex by virtue of the contractual relationship stemming from Trex's manufacturer's warranty sometimes provided in conjunction with the purchase of Trex decking product, which is enforceable by Plaintiffs and the Class as against Trex regardless of where, or from whom, the Trex Product was acquired.

13

14

15

16

251.    As alleged herein, Trex's sales of its decking product breached the implied warranty of merchantability because the Product is not "low maintenance," but develops extensive and unsolvable mold spotting, fungal growth, and discoloration.  Trex decking product is therefore defective, unmerchantable, and unfit for its intended purpose at the time of sale.

17

18

19

20

252.    Trex's conduct in selling and marketing a defective product that develops extensive and unsolvable fungal growth, mold spotting, and discoloration, along with Trex's failure to disclose to the Plaintiffs and the Class the existence of the Defect, is a breach of Trex's obligation of good faith and fair dealing.

21

22

23

24

253.    Trex knew or should have known that its product had the aforesaid properties and was defective, unmerchantable, and unfit for its intended use or purpose.

25

26

254.    Trex had reasonable and adequate notice of the Plaintiffs' and the Classes' claims for breach of implied warranty of merchantability and failed to cure.

27

28

255.    As a result of Trex's breaches of implied warranty, Plaintiffs and members of the Classes have been injured and are entitled to equitable/injunctive relief and/or damages in a measure and amount which are to be determined at trial.

## SEVENTEENTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of All Classes Except Ohio and New Jersey)

256.    Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

257.    Plaintiffs bring this claim on behalf of all Classes except Ohio and New Jersey.

258.    By its wrongful acts and omissions described herein, including selling the defective decking products, Trex was unjustly enriched at the expense of Plaintiffs and the Class members.

259.    It would be inequitable for Trex to retain the profits, benefits, and other compensation obtained by it from its wrongful conduct in manufacturing, marketing and selling defective decking products.

260.    Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution from Trex, and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Trex from its wrongful conduct with regard to the defective decking products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and Class members demand judgment against Trex as follows:

261.    An order certifying the proposed Classes and any appropriate subclasses, designating Plaintiffs as Class Representatives for their respective Classes, and their counsel as Class Counsel;

1            262.    Monetary damages, including but not limited to any compensatory,

2 incidental or consequential damages commensurate with proof at trial for the acts complained of

3 herein;

4            263.    Punitive damages in accordance with proof and in an amount consistent

5 with applicable precedent;

6            264.    A declaration that Trex is financially responsible for notifying all Class

7 members of the pendency of this action;

8            265.    A permanent injunction mandating that Trex repair and/or replace the

9 defective decking products;

10           266.    A declaration that Trex must disgorge, for the benefit of the Classes, all or

11 part of its ill-gotten profits it received from the sale of defective decking products, and/or to make

12 restitution to Plaintiffs and the Class members;

13           267.    Reasonable costs and attorneys' fees;

14           268.    Leave to amend this pleading to conform to the evidence produced at trial;

15 and

16           269.    All other relief the Court deems just and appropriate.

17

18 Dated: March 25, 2010          Respectfully submitted,

19                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

20                By:   */s/ Jonathan D. Selbin*

21                     Jonathan D. Selbin

22                Jonathan D. Selbin (State Bar No. 170222)
                 jselbin@lchb.com

23                Nimish R. Desai (State Bar No. 244953)
                 ndesai@lchb.com

24                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                 275 Battery Street, 29th Floor

25                San Francisco, CA  94111-3339
                 Telephone:   (415) 956-1000

26                Facsimile:    (415) 956-1008

27

28

Elizabeth A. Alexander (*pro hac vice*)
ealexander@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue, North, Suite 1650
Nashville, TN  37219-2423
Telephone:     (615) 313-9000
Facsimile:     (615) 313-9965

Kim D. Stephens
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA  98101-4416
Telephone:  (206) 682-5600
Facsimile:  (206) 682-2992

Robert D. Gary (pro hac vice)
Jori Bloom Naegele (pro hac vice)
GARY, Naegele & Theado, LLC
446 Broadway Avenue
Lorain, OH  44052
Telephone:  (440) 244-4809
Facsimile:  (440) 244-3462

Richard S. Lewis (pro hac vice)
James J. Pizzirusso (pro hac vice)
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone:  (202) 540-7200
Facsimile:   (202) 540-7201

Michael McShane
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone:  (415)-568-2555
Facsimile:  (415)-568-2556

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 200
Minneapolis, MN 55401-2197
Telephone:  (612)-339-6900
Facsimile:  (612)-339-0981

Charles L. LaDuca
CUNEO, GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone:  (202)-789-3960
Facsimile:  (202)-789-1813

*Attorneys for Plaintiffs and the Proposed Class*

1

2

## DEMAND FOR JURY TRIAL

3        Plaintiffs, on behalf of themselves and the proposed Classes, demand a jury trial in this

4   action for all of the claims so triable.

5   Dated: March 25, 2010                Respectfully submitted,

6                                        LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

7                                        By:    /s/ Jonathan D. Selbin
                                                Jonathan D. Selbin
8
                                         Jonathan D. Selbin (State Bar No. 170222)
9                                        jselbin@lchb.com
                                         Nimish R. Desai (State Bar No. 244953)
10                                       ndesai@lchb.com
                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
11                                       275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339
12                                       Telephone:    (415) 956-1000
                                         Facsimile:    (415) 956-1008
13
                                         Elizabeth A. Alexander (*pro hac vice*)
14                                       ealexander@lchb.com
                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
15                                       150 Fourth Avenue, North, Suite 1650
                                         Nashville, TN  37219-2423
16                                       Telephone:    (615) 313-9000
                                         Facsimile:    (615) 313-9965
17
                                         Kim D. Stephens
18                                       TOUSLEY BRAIN STEPHENS, PLLC
                                         1700 Seventh Avenue, Suite 2200
19                                       Seattle, WA  98101-4416
                                         Telephone:  (206) 682-5600
20                                       Facsimile:  (206) 682-2992
                                         Robert D. Gary (pro hac vice)
21                                       Jori Bloom Naegele (pro hac vice)
                                         GARY, Naegele & Theado, LLC
22                                       446 Broadway Avenue
                                         Lorain, OH  44052
23                                       Telephone:  (440) 244-4809
                                         Facsimile:  (440) 244-3462
24
                                         Richard S. Lewis (pro hac vice)
25                                       James J. Pizzirusso (pro hac vice)
                                         HAUSFELD LLP
26                                       1700 K Street, NW, Suite 650
                                         Washington, DC 20006
27                                       Telephone:  (202) 540-7200
                                         Facsimile:  (202) 540-7201
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael McShane
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone:  (415)-568-2555
Facsimile:  (415)-568-2556

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 200
Minneapolis, MN 55401-2197
Telephone:  (612)-339-6900
Facsimile:  (612)-339-0981

Charles L. LaDuca
CUNEO, GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone:  (202)-789-3960
Facsimile:  (202)-789-1813

*Attorneys for Plaintiffs and the Proposed Class*

SECOND AMENDED COMPLAINT
CASE NO. 5:09-CV-00670-JF