Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594

*Counsel for Select Plaintiffs and Lead Counsel for the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN MAHAN, GRETCHEN SILVERMAN, STEVEN MCKENNA, THOMAS SCHAUPPNER, MARJORIE ZACHWIEJA, JOHN FORCELLA, SHEILA SHAPIRO, SABRINA W. HASS and DR. LANNY W. HASS, AMY BIONDI-HUFFMAN, and BRIAN HATHAWAY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TREX COMPANY, INC., <br><br> Defendant. | No. 5:09-CV-00670-JSW <br><br> NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL <br><br> Date:       December 13, 2013 <br> Time:      9:00 a.m. <br> Judge:     Honorable Jeffrey S. White <br> Dept.:      Department 11, 19th Floor |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 13, 2013, at 9:00 a.m., or as soon thereafter as may be heard in the courtroom of the Honorable Jeffrey S. White, United States District Court for the Northern District of California, San Francisco Division, plaintiffs Dean Mahan, Gretchen Silverman, Steven McKenna, Thomas Schauppner, Marjorie Zachwieja, John Forcella, Sheila Shapiro, Sabrina W. Hass and Dr. Lanny W. Hass, Amy Biondi-Huffman, and Brian Hathaway will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order:

1.    Finally approving the settlement they have reached on a class-wide basis with defendant Trex Company, Inc.; and

2.    Finally approving the settlement class; and

3.    Finally appointing the foregoing named plaintiffs as class representatives and Hagens Berman Sobol Shapiro LLP as class counsel.

The grounds for this motion are that the proposed settlement is fair, adequate, and reasonable; that the notice plan, which was the best plan practicable under the circumstances, was effected per the Court's order; and that the other requested relief is well-grounded in law and fact, as set forth in the attached memorandum.  This motion is based on the declarations submitted herewith, with exhibits; the attached memorandum in support of plaintiffs' motion; the pleadings and papers on file in this action; and the oral argument of counsel to be presented at the hearing on this motion.

Dated: November 8, 2013.

HAGENS BERMAN SOBOL SHAPIRO LLP

By ___*/s/ Steve W. Berman*_____
       Steve W. Berman
Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

[Additional signatures at the end of the attached memorandum, which are incorporated here by this reference]

*Lead Counsel for the Proposed Class and Attorneys for Gretchen Silverman, Thomas Schauppner, Marjorie Zachwieja, and Sheila Shapiro*

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF ARGUMENT ........................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ............................................................... 2

III.   STATEMENT OF RELEVANT FACTS ........................................................................ 2

       A.     Substantive and procedural facts ..................................................................... 2

       B.     The settlement .................................................................................................. 4

              1.     Class definition, class period, and claims period ............................... 4

              2.     Relief ................................................................................................... 5

              3.     Notice and release ............................................................................... 6

              4.     Service awards and attorneys' fees, costs, and expenses ................... 7

IV.    ARGUMENT ................................................................................................................. 7

       A.     The Court should grant final approval of the settlement. ................................ 7

              1.     The settlement meets the standards for final approval. ..................... 8

                     a.     The settlement is the product of well-informed, vigorous, and
                            thorough arms'-length negotiation. .................................... 8

                     b.     The settlement is fair, adequate, and reasonable. ............... 9

       B.     The notice program exceeded precedent and satisfied applicable standards. ............. 11

       C.     The proposed class meets the requirements for certification of a settlement class. .... 11

              1.     The Rule 23(a) requirements are met. .............................................. 12

                     a.     Numerosity ........................................................................ 12

                     b.     Commonality ..................................................................... 12

                     c.     Typicality .......................................................................... 13

                     d.     Adequacy ........................................................................... 14

              2.     Common questions predominate, and a class action is the superior
                     method to adjudicate class members' claims. .................................. 14

                     a.     Common questions predominate. ...................................... 15

                     b.     Class treatment is the superior method for adjudicating claims of
                            members of the proposed class. ........................................ 15

V.     CONCLUSION ........................................................................................................... 16

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................... 11, 12

5

6

*Barefield v. Chevron U.S.A., Inc.*,
    1987 WL 65054 (N.D. Cal. Sept. 9, 1987) ............................................................ 13

7

*Burden v. SelectQuote Ins. Servs.*,
    2013 U.S. Dist. LEXIS 41522 (N.D. Cal. Mar. 18, 2013) ................................ 7, 13

8

*Chamberlain v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) ............................................................................... 13

9

10

*Chavez v. WIS Holding Corp.*,
    2010 U.S. Dist. LEXIS 56138 (S.D. Cal. June 7, 2010) ........................................ 8

11

*Churchill Village, L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) .............................................................................. 7, 9

12

13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ............................................................................................. 11

14

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ............................................................................. 14

15

16

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ............................................................................... 7

17

18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 8, 9, 12, 15

19

*Immigrant Project of L.A. Cnty. Fed'n of Labor (AFL-CIO) v. I.N.S.*,
    306 F.3d 842 (9th Cir. 2002) ............................................................................... 12

20

21

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................... 7

22

23

*Local Jt. Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................................. 15

24

*Marilley v. Bonham*,
    2012 U.S. Dist. LEXIS 33678 (N.D. Cal. Mar. 13, 2012) ................................... 13

25

26

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 1

27

28

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ...................................................................................................... 11

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) .......................................................................................... 9

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ....................................................................................... 15

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ......................................................................................... 8

### OTHER AUTHORITIES

*Manual for Complex Litig.* § 21.312 ................................................................................ 11

*Newberg on Class Actions* § 3.5 ...................................................................................... 12

1

## I.    SUMMARY OF ARGUMENT

2          Eleven plaintiffs from around the nation brought this action alleging that defects in

3   defendant Trex Corporation's ("Trex") wood-plastic composite products had manifested in

4   irremediable fungal spotting and discoloration on their decking structures.  Trex adamantly denied

5   these allegations, arguing that these problems were caused by environmental or other issues and

6   excluded from coverage by its written warranty.  For years, the parties litigated this matter

7   vigorously, and ultimately, following intense and lengthy negotiations conducted with the help of a

8   retired federal and state court judge, the Hon. Wayne R. Andersen, the parties reached the

9   nationwide settlement that they bring to this Court for final approval.

10          The parties' settlement provides qualified class members with alternatives among cash,

11   partial cash refunds, and cash-rebate relief.  The first alternative is cash.  The second alternative is

12   rebate-based.  The third alternative is a partial cash refund, or a rebate-based option together with

13   cash as a partial labor reimbursement.  Available rebates can be worth well over $2,000 on

14   purchases of decking sufficient to build an average-sized structure.  Relative to what class

15   members paid for their original decking, some of which went into structures that now could be well

16   over eight years old, the rebate options provide a high quantum of relief to qualified class members

17   who wish to replace their decks.  Moreover, providing cash on each rebate for such a quantity of

18   decking will result in a substantial loss to Trex, not profit from an additional sale.

19          The settlement agreement before this Court was reached after extensive discovery and

20   arms'-length negotiation by experienced and well-qualified counsel.  Because it was not the

21   product of fraud or collusion, and because it does not overreach, it is entitled to a presumption of

22   fairness.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

23   Further, in light of the strengths and weaknesses of plaintiffs' case and other relevant factors, the

24   settlement is fair, adequate, and reasonable, such that final approval is appropriate.  Fed. R. Civ. P.

25   23(e)(2).

26          Finally, the class notice program that was approved preliminarily by this Court was indeed

27   the "best notice practicable under the circumstances," Fed R. Civ. P. 23(c)(2)(B), and it exceeded

28

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL  – 5:09-CV-00670-JSW                       - 1 -
010095-13  652612 V1

1   the program finally approved in the Trex surface-flaking settlement that preceded this case.  It was

2   effected as ordered, and its completion further supports final approval of the instant settlement.

## II.   STATEMENT OF ISSUES TO BE DECIDED

4   Should the Court finally approve the parties' nationwide settlement, which followed

5   comprehensive discovery, expert consultation, litigation, and intense negotiations in which the

6   parties were represented by well-experienced counsel and aided by a respected former federal

7   judge, and which provides valuable benefits to a nationwide class?  Also, should the Court finally

8   certify a settlement class; should it finally appoint the named plaintiffs as class representatives; and

9   should it finally appoint class counsel?

## III.   STATEMENT OF RELEVANT FACTS

### A.   Substantive and procedural facts

12   The parties' settlement flows from the consolidation in March 2010 of two actions brought

13   by two sets of plaintiffs.  (Dkt. No. 152.)  At the time of consolidation, the Court appointed Hagens

14   Berman Sobol Shapiro LLP as lead counsel for plaintiffs and the proposed class.  (*Id*.)

15   Plaintiffs claim that there are defects in Trex's wood-plastic composite decking that have led

16   to fungal spotting/discoloration that will not go away, despite cleaning.  (*See generally* Consol. Am.

17   Compl. (Dkt. No. 175); Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for Final

18   Approval and for Attorneys' Fees, Costs, and Service Awards ("Lopez Decl."), ¶ 2.)  They also

19   allege that Trex has refused to remedy the issues with their decking.  In their consolidated complaint,

20   plaintiffs alleged violations of the Magnuson-Moss Warranty Act, breach of express warranty under

21   state laws, breach of implied warranty under state laws, violation of state consumer protection

22   statutes, fraudulent concealment or nondisclosure, and fraudulent misrepresentation.  (*Id*.)  They also

23   asked for appropriate equitable relief.  (*Id*.)  And they asked that a nationwide class be certified as to

24   their claims, and that they be appointed class representatives.  (*Id*.)

25   In its answer to plaintiffs' consolidated complaint, Trex denied all liability to plaintiffs and

26   the putative class.  (*See generally* Trex Ans. (Dkt. No. 182).)  According to Trex, the conditions at

27   issue were caused by environmental conditions or improper installation, such that relief was

28   precluded under exclusions in its written warranty.  (*Id*., ¶¶ 21, 71-94.)  In addition, Trex denied that

1    any reimbursement for labor expenses was due, owing to a disclaimer in its written warranty of

2    damages for labor specifically and consequential damages more generally.  (*Id.*)  It also contended

3    that plaintiffs' warranty claims were barred due to insufficient notice.  (*Id.* at 16.)

4          Following the Court's[1] entry of preliminary orders at the end of 2010, Dkt. Nos. 188 and 189,

5    the parties exchanged initial disclosures and formal discovery requests, including interrogatories and

6    requests for production.  Trex's production to plaintiffs was substantial, comprising some 17,000

7    documents, many of a technical nature.  (Lopez Decl., ¶ 3.)

8          After review of Trex's initial production, plaintiffs, in consultation with a scientific and

9    industry expert, propounded further discovery to Trex, and they subpoenaed third-party documents

10   as well.  After review of this material, plaintiffs, following additional consultation with their expert,

11   deposed two Trex employees, including a company technical representative.  (Lopez Decl., ¶ 4.)

12         As part of its own discovery efforts, Trex deposed the plaintiffs near their homes around the

13   country, and plaintiffs' counsel defended.  In addition, Trex inspected most of the decks and other

14   Trex structures belonging to the plaintiffs.  (*Id.*, ¶ 5.)

15         As the parties neared the completion of discovery at the end of 2011 and approached the

16   scheduled date for plaintiffs to file their motion for class certification, Trex moved to transfer this

17   case to the Western District of Virginia, where it has its headquarters.  Plaintiffs opposed this motion

18   vigorously, including by way of declarations from almost all of the named plaintiffs.  (*Id.*, ¶ 6.)

19         Shortly after briefing on this motion was complete, the parties broached the possibility of

20   settlement with one another.  While each side was prepared to litigate this matter through class

21   certification and trial, if necessary, and while each believed in the strength of its case, each also

22   recognized the risks inherent to its position in this matter.  (*Id.*, ¶ 7.)  Following discussion of initial

23   proposals, the parties decided it would best enable the prospects for settlement if they worked with a

24   proven, well-respected mediator.  Accordingly, the parties engaged the Hon. Wayne R. Andersen

25   (Ret.), who had served formerly as a United States District Judge for the Northern District of Illinois

26   for 19 years and as a state court trial judge for 7 years.  (*Id.*, ¶ 8.)

27

28
     _____
     [1] At the time, Judge Fogel presided over the case.

Counsel for the parties, who are well-experienced in class-action litigation and with the law and facts at issue in this matter, first met with Judge Andersen in Chicago in March 2012. While they made some progress toward settlement through vigorous negotiation during this day-long mediation session, they were unable to reach a deal. They did, however, continue to remain engaged in the process. (*Id.*, ¶ 9.)

After making further progress toward settlement, counsel for the parties engaged in a second in-person mediation with Judge Andersen in August 2012. This mediation also took place in Chicago. Plaintiffs' expert consultant accompanied counsel for the plaintiffs to this mediation; likewise, counsel for Trex brought one of its key technical representatives. (*Id.*, ¶ 10.)

At this second mediation session, the parties again engaged in a vigorous give-and-take on the issues and possible class-wide relief. Following this hard-fought negotiation, and with aid from their technical experts and more assistance from Judge Andersen, the parties reached most terms of a nationwide settlement. But work remained to be done. (*Id.*, ¶ 11.)

The parties continued to negotiate, with more help from their technical consultants and Judge Anderson. Finally, the parties concluded their difficult and contentious efforts toward the nationwide settlement that plaintiffs initially brought to this Court for its review. (*Id.*, ¶ 12.)

Following receipt of the Court's order of May 28, 2013, which the Court issued after plaintiffs filed their motion for preliminary approval, the parties entered into further contentious negotiations. Through this continued engagement, the parties were able to conclude revisions to the settlement. (The Court granted preliminary approval on August 27, 2013.

**B.    The settlement**

**1.    Class definition, class period, and claims period**

The parties' agreement defines the settlement class as follows:

All Persons in the United States or its territories who own or owned a Trex Structure built with Trex Product[2] purchased during the Class Period. Included within the Settlement Class are the legal representatives, heirs, successors in interest, transferees, and assignees of all such foregoing holders and/or owners, immediate and remote. Excluded from the Settlement Class are: Defendant and its subsidiaries and affiliates; all Persons who, in accordance with the terms of this Agreement,

---

[2] "Trex Product" means "any and all Trex non-shelled wood-plastic composite decking, railing, or fencing material" sold under various trademarks set forth in the settlement agreement." (*Id.* at 10.)

1    properly execute and timely file during the Opt-Out Period a request for exclusion
     from the Settlement Class; all governmental entities; and the judge(s) to whom this
2    case is assigned and any immediate family members thereof.

3    (Lopez Decl., Ex. B at 9.)  The Class Period is defined as "the period of time between August 1,

4    2004 and the date of entry of the Court's order granting preliminary approval of the Settlement."

5    (*Id*. at 13.)  The Claims Period is defined as "that period of time that expires nine (9) months from

6    entry of the Court's order granting preliminary approval of the settlement."  (*Id*. at 9.)

7         **2.    Relief**

8         The settlement offers up to $8.25 million, measured in terms of costs to Trex, in class

9    relief.[3]  There are three tiers of relief available to qualified class members.[4]

10        Tier 1 provides cash awards at the presumptive value of $150 per class member.[5]  Tier 1

11   cash awards, subject to pro-rating if the benefit is oversubscribed, are available up to the settlement

12

13   _____

14        [3] There is an $8.25 million cost cap in the settlement.  But $8.25 million is *not* the upper value
     of the settlement to class members.  This is because charges against the cap are measured in terms
     of costs to Trex, including net costs for the rebate certificates rather than the redeemed value of the
15   certificates, and subject to verification by class counsel. (Lopez Decl., Ex. B at 10, 25-26, 28.)
     Thus, if a class member receives a $2,250 check after redeeming a rebate certificate, $2,250 is not
16   charged against the cap; instead, a considerably smaller amount is charged.  (*Cf.* Garcia Decl., ¶¶ 5-
     6 *with* Perrone Decl., ¶¶ 5-6.)  Furthermore, costs for administration of the settlement, notice,
17   specific gravity testing; service awards to named plaintiffs, dispute resolution, and attorneys' fees
     and costs are not counted against this cost cap.  Trex will provide class counsel with quarterly
18   reports of its costs as defined in the agreement. (Lopez Decl., Ex. B at 28.)  Accordingly, the
     settlement has much higher potential value to the class than $8.25 million.

19        There also is a yearly cost cap.  This cap is at $6.75 million for the first 12 months, measured
     from the time of the first disbursement of relief pursuant to the settlement.  Relief corresponding to
20   costs to Trex above this sum in the first 12 months will be deferred to the next year, up to a total
     value in terms of costs to Trex of $8.25 million.  (*Id.* at 26.)

21        [4] While Trex will administer the bulk of the settlement, class members also have rights of
22   appeal to a neutral third-party adjudicator.  Class members have rights of appeal to this adjudicator,
     which will be paid by Trex, regarding proof of spotting coverage over their Trex structures; the
23   results of specific gravity testing; and claims determination.  (*Id.* at 19, 22, 24-25, 33.)

24        [5] Under Tier 1 of the settlement as initially presented, qualified class members whose Trex
     structure manifests fungal spotting or significant color fading or variation were entitled to a $20
25   cash payment.  As a result of further intense and contentious negotiations undertaken by the parties
     in response to the Court's order of May 28, 2013 (Dkt. No. 276), the parties agreed to a revision
26   whereby the presumptive payment is $150 per class member.  This $150 sum is subject to *pro rata*
     reductions in the unlikely event that a set-aside of $1.4 million is exceeded by claims
27   presumptively valued at $150 each.  But in no event would any qualified Tier 1 claim result in a
     payment of less than $20 unless the response to all tiers was so strong that all payments would have
28   to be pro-rated so as not to exceed the overall $8.25 million cost cap – an even less likely scenario.
     Thus, cash awards are available up to an aggregated $8.25 million.  (*Id.* at 14.)

cost cap of $8.25 million.[6]  (*Id.* at 14.)  Moreover, in a hard-won concession from Trex, claims are not subject to disapproval for improper product installation.

Tier 2 provides an alternative 40% rebate measure (and cash refund for cleaning product) to qualified class members who would like to replace their current decking with a new-generation Trex product that is designed to resist mold and mildew staining and color fading.  (*Id.* at 14-20.)

Tier 3 provides two further alternatives to the Tier 1 cash award.  Under one option, class members who qualify for Tier 3 relief, including by way of having submitted a sample of their decking for specific gravity evaluation that tests at or below a negotiated value, have another cash option in lieu of Tier 1 monetary relief.  These class members can opt for a 20% cash refund on their current decking.  (*Id.* at 20-25.)  Under the other alternative, a 50% rebate (and cash refund for cleaning product) is available to qualified class members who would like to replace their current decking with a new-generation Trex product that is designed to resist mold and mildew staining and color fading, as well as a partial cash reimbursement for labor expenses based on a value of $.23 per linear foot of product presently installed.  (*Id.* at 23.)

Additionally, Trex agreed to pay all costs associated with the combination notice program.[7]

### 3.   Notice and release

The parties' settlement also provided for a robust notice program consisting of direct regular and email notice and electronic and print publication notice.  (*Id.* (Lopez Ex. B) at Ex. G thereto.)  This program, which the parties revised in response to the Court's May 28 order, called for direct notice together with publication in six national print publications, including *USA Today* and *Sunset* magazine, as well as electronic notice via Internet web banners and ads tied to key word searches, together with a national press release and a dedicated website, is explained more fully in the notice plan attached to the revised settlement agreement and in the declarations of the parties' notice expert, Alan Vasquez, and opposing counsel, Patrick J. Perrone, which are submitted with

---

[6] *See* n.5, *supra*.

[7] Trex also agreed to cease the manufacture and sale of most of its non-shelled wood-plastic composite products, and to strengthen its written-warranty distribution practices until all such product is off the market.  (*Id.* at 22-23.)  This equitable relief is socially beneficial; plaintiffs had hoped at best to achieve revisions to Trex's marketing and warranty practices.

1   this motion.[8]  As Mr. Vasquez and Mr. Perrone describe and attest, this plan was effected (some

2   Internet aspects are ongoing) per the Court's order granting preliminary approval and the Court's

3   subsequent order permitting use of a substitute print publication for one that no longer was

4   available.

5         **4.       Service awards and attorneys' fees, costs, and expenses**

6         As explained more fully in the plaintiffs' accompanying motion for attorneys' fees and

7   costs and plaintiff service awards, Trex agreed in later, separate negotiations mediated by Judge

8   Andersen to pay service awards of $7,500 to each named plaintiff, subject to Court approval, and

9   to pay plaintiffs' attorneys' fees and costs in a sum up to $1.475 million.  These sums will not

10  dilute the millions of dollars in relief available to the class.  (*Id.* at 35-36, 43.)

                                    **IV.     ARGUMENT**

11  **A.    The Court should grant final approval of the settlement.**

12        Settlements are to be encouraged in class-action lawsuits.  The Court, however, must

13  approve class settlements, and in so doing, it must examine "whether a proposed settlement is

14  'fundamentally fair, adequate, and reasonable.'"  *Burden v. SelectQuote Ins. Servs.*, 2013 U.S. Dist.

15  LEXIS 41522, at *6 (N.D. Cal. Mar. 18, 2013) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th

16  Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The instant

17  settlement passes that test, making available millions of dollars of relief for claims that would face

18  a myriad of credible defenses if litigated to the end, including warranty exclusions and disclaimers

19  and issues of proof relating to proper installation, weather effects, and improper or no cleaning.

20        Furthermore, negotiated settlements like the instant one are to be encouraged.  As the Ninth

21  Circuit has stated, "there is an overriding public interest in settling and quieting litigation.  This is

22  particularly true in class action suits. . . ."  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir.

23  1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also*

24  *Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*,

25  47 F.3d 373, 378 (9th Cir. 1995).  Settlement is desirable in class action suits because they are "an

26

27        _____

          [8] *See generally* Declaration of Alan Vasquez Regarding Implementation of Notice Plan
    ("Vasquez Implementing Decl.") and Declaration of Patrick J. Perrone Regarding Compliance with
28  CAFA Notice Requirements and Notice Plan ("Perrone Notice Decl.").

1    ever increasing burden to so many federal courts and [] frequently present serious problems of

2    management and expense." *Van Bronkhorst*, 529 F.2d at 950.

3          Additionally, courts should give "proper deference" to a parties' settlement. "[T]he court's

4    intrusion upon what is otherwise a private consensual agreement negotiated between the parties to

5    a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement

6    is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and

7    that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v.*

8    *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quotations omitted); *see also Chavez v. WIS*

9    *Holding Corp.*, 2010 U.S. Dist. LEXIS 56138, at *4 (S.D. Cal. June 7, 2010) ("The Court gives

10   weight to the parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac.*

11   *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

12          **1.      The settlement meets the standards for final approval.**

13                 **a.      The settlement is the product of well-informed, vigorous, and thorough**
                            **arms'-length negotiation.**

14          In contemplating final approval of a class settlement, one of the Court's duties is to ensure

15   that "the agreement is not the product of fraud or overreaching by, or collusion between, the

16   negotiating parties . . . ." *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted). As set

17   forth above, the settlement in this matter was achieved only after: a lengthy investigation of

18   plaintiffs' claims, including the review of hundreds of complaints from Trex customers, together

19   with photographs of spotted and discolored decks; thorough discovery; consultation with a well-

20   credentialed expert on wood-plastic composites who authored a book on the subject matter, for

21   which he had studied various decking products, including the Trex decking here at issue; and much

22   negotiation with the aid of a retired federal and state judge, who conducted two in-person

23   mediations with the parties (one of which was attended by the parties' technical consultants) and

24   numerous follow-up communications via phone and in writing, all over a span of many months.

25   (Lopez Decl., ¶¶ 9-14; Klyosov Decl. (Dkt. No. 261), ¶¶ 1, 5.) Further, the parties in this matter

26   were represented throughout by attorneys with extensive experience in class-action and consumer

27

28

1   litigation.  (Lopez Decl., ¶¶ 15, 19-20,  and Ex. A.)  Counsel endorse the settlement reached on

2   behalf of the class.[9]

3           Because of the foregoing, plaintiffs' counsel were well situated to evaluate the strength and

4   weakness of plaintiffs' case.  Far from being the product of anything inappropriate, the settlement

5   at issue is the result of long, hard-fought, and adversarial work, such that it is worthy of final

6   approval by the Court.  *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there

7   was no evidence suggesting that the settlement was negotiated in haste or in the absence of

8   information).

9                   **b.        The settlement is fair, adequate, and reasonable.**

10          Rule 23(e) requires a district court to ensure that a proposed class action settlement is fair,

11  adequate, and reasonable. In assessing whether a settlement is fair, adequate, and reasonable, the

12  court must weigh a number of factors, including:

13          (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
            duration of further litigation; (3) the risk of maintaining class action status
14          throughout the trial; (4) the amount offered in settlement; (5) the extent of
            discovery completed and the stage of the proceedings; (6) the experience and views
15          of counsel; (7) the presence of a governmental participant; and (8) the reaction of
            the class members to the proposed settlement.
16

17  *Churchill Village*, 361 F.3d at 575; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,

18  1375 (9th Cir. 1993).  Consideration of these factors supports final approval of the settlement.

19          Plaintiffs pled a comprehensive set of claims against Trex based primarily on warranty and

20  consumer fraud theories.  They also engaged an expert consultant who literally wrote the book on

21  wood-plastic composites and who was formerly an executive at one of Trex's competitors.  Their

22  counsel have extensive experience in consumer class actions, and they deployed the resources

23  necessary to prosecute this case well.  Having conducted written and deposition discovery with the aid

24  of their expert consultant, and having studied and analyzed the material produced, including with the

25  assistance of Dr. Klyosov, they were poised to proceed based on the liability and damages theories

26  they had developed.  (Lopez Decl., ¶¶ 3-6.)

27          [9] Lopez Decl., ¶¶ 13, 25; Declaration of Elizabeth A. Alexander, ¶ 36; Declaration of Andrew
       N. Friedman, ¶ 8; Declaration of Charles J. LaDuca, ¶ 23; Declaration of Michael McShane, ¶ 6;
28     Declaration of James J. Pizzirusso, ¶  19; and Declaration of Kim D. Stephens, ¶ 9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nonetheless, all litigation bears risks, and Trex was armed with steely commitment and excellent counsel.  It pledged repeatedly that if this matter were litigated, it would stand on its defenses that there was no defect in its product, and that individual issues were the causes of plaintiffs' complaints, such that no class could be certified.  As it reminded plaintiffs repeatedly, it had received complaints corresponding to only a tiny fraction of product on the market.  Trex was in this litigation for the long haul; indeed, on more than one occasion it suggested that it would appeal if plaintiffs won a contested motion for class certification based on its belief that there were too many individual issues to sustain class status  (*Id.*, ¶ 13.)

But with the aid of Judge Andersen as mediator, and through preparation and perseverance, plaintiffs achieved a settlement that offers benefits to the class well in excess of $8.25 million in value.  This is a real-world fine result when weighed against the strengths and challenges of plaintiffs' case, and one which Trex at the inception of this case would never have agreed to, having refused completely to settle this matter along with surface-flaking claims.  And as stated above and in the declarations accompanying this motion, counsel with extensive experience and great expertise in class actions and consumer work, endorse the settlement reached.

Finally, while there were no government participants in this action, the U.S. attorney general, and state, District of Columbia, and territorial attorney generals, were notified of this settlement, and none has objected.  As for the reaction of class members, only 89 opted out by the published deadline of October 28, 2013, representing .000134 of those receiving direct notice of the settlement.  (*Cf.* Perrone Notice Decl., Ex. A *with* Vasquez Implementation Decl., ¶ 6.) Further, only two objections were received and briefed at the preliminary approval phase.  One was withdrawn, and after a thorough consideration of the second, the Court overruled the second relative to the preliminary approval proceedings.  The parties have received what might be construed to be two more objections, but it is unclear if those will be presented and briefed as part of the final approval process.  The paucity of opt-outs and objectors speaks to a positive class reaction to the settlement, further supporting its final approval.

**B.    The notice program exceeded precedent and satisfied applicable standards.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . .'" *Manual for Complex Litig.* § 21.312, at 293.  In order to protect the rights of absent class members, the Court must direct the best notice practicable to class members.  *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174-75 (1974).  As explained in the Vasquez and Perrone declarations, the plan, which exceeded the plan approved by the Court in the surface-flaking settlement, was implemented as ordered.  In addition to 66,386 class members receiving direct notice, thousands more TrexPro contractors, Trex distributors, and retailers did as well.  Publication notice included six national print publications, including *USA Today* and *Sunset* magazine, and Internet notice, which included text link ads via the Google Display Network and Facebook, generated over 17,650,000 impressions.  Sponsored links which appear upon key word searches will result in almost 1,000,000 more.  There also were website banner ads resulting in many hundreds of thousands more.  All told, the notice administrator expects that when the Internet advertising campaign is complete, there will have been 57,450,000 impressions.  Further, the dedicated settlement website has received almost 121,000 hits from 22,460 visitors to-date.  (*See generally* Vasquez Implementing Decl.)  Plaintiffs submit that the notice requirement of Rule 23(3)(1)(B) has been well satisfied.

**C.    The proposed class meets the requirements for certification of a settlement class.**

In *Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997), the Supreme Court of the United States confirmed the propriety, and recognized the necessity, of settlement class certification in matters such as this one, where class members are identifiable, and where there are relatively small economic damages.  As the Court put it,

> [t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id.* at 617 (internal quotes and citations omitted).

Here, there is one product at issue, an alleged course of conduct common to all class members, and only economic damages at stake; thus, this is the kind of class action endorsed in *Amchem*.  Without this class action and settlement, most class members would be "without effective strength to bring their opponents into court at all."  *Id*.  In a situation such as this, where the proposed class seeks only economic damages (as distinct from a class or classes seeking individualized personal injury and future-injury damages), settlement class certification is eminently proper.  *E.g.*, *Hanlon*, 150 F.3d at 1019-23.

### 1. The Rule 23(a) requirements are met.

In order to merit class certification, plaintiffs must show at the outset that the class is so numerous that joinder is impracticable; questions of law or fact are common to the class; the claims of the representative plaintiffs are typical of the claims of the class; and the proposed class representatives will protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a). Plaintiffs meet these prerequisites.

#### a. Numerosity

Trex has disclosed that it has received over 11,000 complaints or claims related to fungal spotting and color variation/fading (or a combination thereof) on its wood-plastic composite decking.  Counsel for plaintiffs have received well over a thousand more.  (Lopez Decl., ¶ 13.)  On the basis of these numbers alone, "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Given these figures, the requirement of numerosity is easily satisfied here.  *See*, *e.g.*, *Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002) (noting that numerosity requirement has been satisfied in cases involving 39 class members); *Newberg on Class Actions* § 3.5 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

#### b. Commonality

As one court recently summarized:

Commonality requires the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). Commonality focuses on the relationship of

1

2

3

4

5

> common facts and legal issues among class members.  *See*, *e.g.*, 1 William B.
> Rubenstein, *Newberg on Class Actions* § 3:19 (5th ed. 2011).  Courts construe this
> requirement permissively.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.
> 1998).  "All questions of fact and law need not be common to satisfy the rule.  The
> existence of shared legal issues with divergent factual predicates is sufficient, as is a
> common core of salient facts coupled with disparate legal remedies within the
> class."  *Id.*  In fact, it only takes one common question of fact or law shared between
> proposed class members to satisfy commonality.  *Dukes*, 131 S. Ct. at 2556.

6

*Marilley v. Bonham*, 2012 U.S. Dist. LEXIS 33678, at *9-10 (N.D. Cal. Mar. 13, 2012).  The

7

requirement of commonality is satisfied by plaintiffs' allegations.

8

Among the common questions raised are whether there was a common defect or defects in

9

Trex wood-plastic composite decking; whether Trex knew of any such defect; whether Trex had a

10

duty to disclose any such defect; whether Trex concealed such defect(s) from the class; whether

11

Trex failed to disclose material facts regarding its decking; whether the products at issue were free

12

from material defects in workmanship and materials, as promised by Trex's express warranty; and

13

whether any defect or defects in Trex's product caused a breach of Trex's implied warranty of

14

merchantability.  The Ninth Circuit cited a list of common questions including ones similar to these

15

in *Chamberlain v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005), where it found

16

commonality.  Plaintiffs have identified numerous questions of law and fact common to the class,

17

such that the requirement of commonality is met.

18

### c.  Typicality

Typicality is met as well.  Indeed, a finding of commonality ordinarily will satisfy the

19

requirement of typicality, too.  *Barefield v. Chevron U.S.A., Inc.*, 1987 WL 65054, at *5 (N.D. Cal.

20

Sept. 9, 1987).

21

> Rule 23(a)(3) requires that "the claims or defenses of the representative
> parties be typical of the claims or defenses of the class."  []  "The purpose of the
> typicality requirement is to assure that the interest of the named representative
> aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497,
> 508 (9th Cir. 1992).

22

23

24

*Burden*, 2013 U.S. Dist. LEXIS 41522, at *12-13 (citation omitted).  Here, the interests of the

25

named plaintiffs and class members align neatly.

26

Plaintiffs have the same claims as members of the class they seek to represent, and they

27

must satisfy the same legal elements that class members must satisfy.  They share identical legal

28

theories with putative class members, based on allegations that Trex marketed and sold defective

products.  Their injuries are the same, too; like others in the proposed class, plaintiffs overpaid for product that allegedly bore latent defects.  Thus, Rule 23(a)(3) is satisfied.

### d.  Adequacy

Finally, it must be determined whether plaintiffs "will fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In making this determination, courts must consider two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted).  Plaintiffs meet this requirement as well.

First, plaintiffs' claims are co-extensive with members of the putative class.  All have an identical interest in establishing Trex's liability, and each has been injured in the same manner.  All assert the same legal claims, and all seek identical relief.  There is no conflict among them.

Also, each named plaintiff has agreed to assume the responsibility of representing the class, and each has made him- or herself available to do so, including by way of responding to discovery, testifying at depositions, and consulting with counsel during the course of this litigation.  (*See* Lopez Decl., ¶ 14.)

Second, as discussed and referenced in the declaration of counsel and its Exhibit A, plaintiffs' lawyers have extensive experience and expertise in prosecuting complex class actions, including commercial, consumer, and product defect actions.  Counsel have pursued this litigation vigorously, and plaintiffs' attorneys are committed to advancing and protecting the common interests of all members of the class.  (*Id.* at, *e.g.*, ¶ 15.)

Rule 23(a)(4) is satisfied.[10]

### 2.  Common questions predominate, and a class action is the superior method to adjudicate class members' claims.

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied.  Here, Rule 23(b)(3) is satisfied because questions common to class members predominate over questions affecting only individual class members,

---

[10] And, for the reasons expressed here and previously, plaintiffs ask that they be finally appointed class representatives for the requested class and that Hagens Berman Sobol Shapiro LLP be finally appointed class counsel.

1   and the class action device provides the best method for the fair and efficient resolution of class

2   members' claims.  Although Trex continues to deny that common issues predominate, Trex does

3   not oppose final class certification for purposes of giving effect to the parties' settlement.  When

4   addressing the propriety of class certification, the Court should consider the fact that, in light of the

5   settlement, trial will now be unnecessary, such that the manageability of the class for trial purposes

6   is not relevant to the Court's inquiry.  *E.g.*, *Hanlon*, 150 F.3d at 1021-23.

### a.      Common questions predominate.

7       Rule 23(b)(3) requires an examination of whether "questions of law or fact common to the

8   members of the class predominate over any questions affecting only individual members . . . ."

9   "When common questions present a significant aspect of the case and they can be resolved for all

10  members of the class in a single adjudication," class treatment is justified.  *Local Jt. Exec. Bd. of*

11  *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

12  Even one issue of central importance to the case and common to all class member claims . . . can

13  cause class litigation to be appropriate.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32

14  (9th Cir. 1996).  Here, common questions predominate.

15      Common questions include whether Trex's wood-plastic composite products are defective,

16  whether Trex knew as much and concealed its knowledge, and whether Trex had a duty to disclose

17  what it knew, among others discussed above.  These numerous common questions at the heart of

18  this matter predominate over any issues affecting only individuals.  Predominance is established.

### b.      Class treatment is the superior method for adjudicating claims of members of the proposed class.

19      As for the requirement in Fed. R. Civ. P. 23(b)(3) that the class action be "superior to other

20  available methods for fair and efficient adjudication of the controversy," class treatment will

21  facilitate the fair and efficient resolution of all putative class members' claims.  Given that

22  plaintiffs are aware of thousands of class members sharing common issues, the class device is the

23  most efficient and fair means of adjudicating all these many claims.  Class treatment is far superior

24  to thousands of individual suits or piecemeal litigation; in this matter, it will fulfill its function of

25  conserving scarce judicial resources and promoting the consistency of adjudication.  Accordingly,

26  the superiority aspect of Rule 23(b)(3) is readily met.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### V.    CONCLUSION

For all of the foregoing reasons, plaintiffs ask respectfully that the Court grant final approval of the class settlement, grant final approval of the settlement class, finally appoint the named plaintiffs as class representatives, and finally appoint Hagens Berman as class counsel.

Dated: November 8, 2013.

HAGENS BERMAN SOBOL SHAPIRO LLP


By ___*/s/ Steve W. Berman*_____
        Steve W. Berman
Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Ste. 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:   (510) 725-3001
jefff@hbsslaw.com

*Lead Counsel for the Proposed Class and Attorneys for Gretchen Silverman, Thomas Schauppner, Marjorie Zachwieja, and Sheila Shapiro*

Jonathan D. Selbin (170222)
Nimish R. Desai (244953)
LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
275 Battery Street
San Francisco, CA  94111-3336
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Elizabeth A. Alexander (*pro hac vice*)
LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
One Nashville Place
150 Fourth Avenue, North, Ste. 1650
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965

Kim D. Stephens
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Ste. 2200
Seattle, WA  98101-4416
Telephone:  (206) 682-5600
Facsimile:   (206) 682-2992

Michael McShane
AUDET & PARTNERS, LLP
221 Main Street, Ste. 1460
San Francisco, CA  94105
Telephone:  (415) 568-2555
Facsimile:   (415) 568-2556

Robert D. Gray (*pro hac vice*)
Jori Bloom Naegele (*pro hac vice*)
GARY, NAEGELE & THEADO, LLC
446 Broadway Avenue
Lorain, OH  44052
Telephone:  (440) 244-4809
Facsimile:   (440) 244-3462

Richard S. Lewis (*pro hac vice*)
James J. Pizzirusso (*pro hac vice*)
HAUSFELD LLP
1700 K Street, NW, Ste. 650
Washington, DC  20006
Telephone:  (202) 540-7200
Facsimile:   (202) 540-7201

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue South, Ste. 200
Minneapolis, MN  55401-2197
Telephone:  (612) 339-6900
Facsimile:   (612) 339-0981

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Charles L. LaDuca
CUNEO, GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC  20002
Telephone:  (202) 789-3960
Facsimile:   (202) 789-1813

*Counsel for Dean Mahan, Steven McKenna, John Forcella, Sabrina W. Hass and Dr. Lanny W. Hass, Amy Biondi-Huffman, and Brian Hathaway*